BURDICK v. MARSHALL.—*In re* SPAULDING *et al.*

1. Proceedings for a contempt of court, being essentially criminal in their character, a conviction cannot be sustained unless the acts complained of constitute the offense.

2. Evidence offered in support of the charge examined, and found to be insufficient to sustain a judgment of conviction.

(Syllabus by the Court.   Opinion filed March 4, 1896.)

Error to circuit court, Codington county.   Hon. J. O. ANDREWS, Judge.

Defendants were convicted of contempt of court, and bring error.   Reversed.

The facts are stated in the opinion.

*Cheever & Hall* and *George W. Case,* for plaintiffs in error.

If the defendant declares that nothing improper was intended and that he acted in good faith, the declaration is in many instances sufficient.   3 Am. & Eng. Ency. of Law, 797; People v. Few, 2 Johns (N. Y.), 290; Spink v. Francis, 19 Fed. 678.   The meddling with property constructively attached does not constitute a contempt.   Steam Stone-Cutter Co. v. Winsor Mfg. Co., 3 Fed. 298.   Disobedience of an order of the court not authorized by the law is not contempt.   Lester v. People, 23 N. E. 387; Blake v. Blake, 80 Ill. 523; Lester v. Berkowitz, 17 N. E. 706.   Contempt proceedings "are not to be reviewed unless it is apparent that no contempt has been committed, or that the court exercised its authority in a capricious, oppressive or arbitrary manner, and a case might arise even if the court has jurisdiction, where the acts alleged as a contempt were not contemptuous nor intended to be."   State v. Knight, 3 S. D. 509; State v. Sweetland, 3 S. D. 503.

*Coe I. Crawford* (Attorney General), and *Glass, Weeden & Hanten,* for defendant in error.

The question of jurisdiction is the only one which this court will review upon writ of error.   State v. Sweetland, 3 S.

D. 503; State v. Knight, 3 S. D. 509: Gaudy v. State, 14 N. W. (Neb.) 143. This court will not review the evidence upon which the findings of fact are based. State v. Sweetland, *supra*, and State v. Knight, *supra*.

FULLER, J. Plaintiffs in error were charged in an affidavit for and order to show cause why they should not be punished for contempt of court for taking from the possession of a receiver appointed by the circuit court in the above entitled action a certain locomotive dummy engine and car, upon which it is claimed a lien for repairs existed against the Watertown & Lake Kampeska Railway Company, in favor of the firm of Marshall & Burdick, whose coprrtnership effects had been placed in the hands of said receiver pending litigation between the members of said firm. At the conclusion of the hearing, plaintiffs in error were adjudged to be in contempt, and it was by the court ordered "that said Ebenezer F. Spaulding pay a fine of one hundred and fifty dollars, and that in default of the payment thereof that he be committed to the county jail of Codington county until said fine is paid; that the said George W. Case pay a fine of one hundred dollars, and that he be suspended from practicing law in the circuit court of said state from the service of this order until said fine is paid, unless otherwise ordered by the court." From the foregoing judgment of conviction error is brought to this court for examination and review.

Dependent upon possession, one who alters or repairs any article of personal property for another has a lien thereon for his reasonable charges, but such lien is extinguished by the voluntary restoration of such property to the owner, unless otherwise agreed upon by the parties. Comp. Laws, §§ 4345, 4450. As all questions of fact relating to the jurisdiction of a court to punish for contempt are within the scope of legitimate inquiry, we will first ascertain whether there is evidence sufficient to show that the property in question was rightfully within the possession of the receiver, Mr. Newby, by virtue of a lien

for repairs thereon, at the time of the alleged interference therewith by plaintiffs in error.    It appears from the undisputed evidence that the contemner Spaulding was the duly qualified and acting receiver of the Watertown & Lake Kampeska Railway Company, a corporation, by virtue of his appointment to that position by the United States circuit court, and as such was expressly charged with the possession, management and control of all its railway property, equipments and fixtures and franchises; and the contemner George W. Case, an attorney at law, duly licensed to practice his profession in all the courts of this state, was duly retained as counsel for said Spaulding in all matters pertaining to his duties as receiver.    While Mr. Newby avers in his affidavit to show cause that a large portion of the amount claimed to be due the firm of Marshall & Burdick was for repairing the engine in controversy during the month of August, 1893; and prior thereto, it is also stated therein that materials and labor upon said engine of the value of $41.80, were furnished on the 1st day of July, 1895, at the special instance and request of said Spaulding, no part of which has been paid; that at all times since furnishing such repairs said engine and car have been in the continous possession of Marshall & Burdick, or certain other gentlemen who had acted in turn as receivers of said copartnership, prior to the appointment of affiant, and until the night of July 1, 1895, when plaintiffs in error unlawfully took said property from the possession of affiant, into whose hands the same had been delivered by one R. H. Bradley, his immediate predecessor as the receiver of said firm; and that they still maintain the actual control and management of said engine and car for the transportation of passengers upon said local railway between the city of Watertown and Lake Kampeska; and that said Spaulding and Case had actual knowledge at the time of taking said property that the same was in the possession and under the control of affiant by virtue of his appointment.    As we are disposed to view the proceedings, it will not be necessary to consider mitigating evidence and cir-

cumstances, strong and almost conclusive in character, which was offered for the purpose of showing an absence of any intention to commit the offense of which plaintiffs in error were convicted. It seems that trains had not been operated upon the railway in question for several months. The engine and car, at the time of the alleged taking, stood upon the track and right of way of the company, immediately in front of the repair shops of Marshall & Burdick, and at the precise point where, according to the testimony of plaintiff in error Spaulding he had left the same the previous season, when he discontinued the operation of the line.

Concerning the taking of the engine and car Spaulding testified in part as follows: "I went down that night to steam up, and set my engineers to work to make any further repairs that might be necessary. The repairs on the engine had been made during the Saturday night previous. The only object in going there in the night was to complete our repairs and make a test of the engine, so that we might run it in the morning early. The encampment was already under way. We had lost two day's time already. The encampment was on the way, and I gave the engineer orders to commence running early in the morning. I did not take them secretly nor by stealth." The following testimony of E. J. Allen was offered on the part of the accused: "I live near Watertown. I am an engineer. I have operated this dummy engine and car in question. I was employed by Dr. Spaulding last June as head engineer. I was present July 1st, when the car and engine were taken. Dr. Spaulding, myself and the conductor went to the car, and Dr. Spaulding had the keys, and took them out, and I rather think it was him that unlocked the door. I told him the first thing to do was to get it somewhere where we could get water, and we run it down to the Arcade. Before running it down I spoke of a fireman who fired for me, and where he lived, and he sent after him. He was there when we moved the car. There was no one said a word to us. The engine and car was

where I left it the year before; in the same spot. The engine and car were in the possession of Dr. Spaulding last year. I operated them under his instruction. There was no force or threats used in taking the car or engine." Concerning the contemptuous acts of Spaulding and Case, the witness L. D. Lyon testified that "The cars were on the track of the Watertown and Lake Kampeska Railway Company, in front of the shop of Marshall & Burdick, where they were nearly always left. If the motor was to be run at all, it was necessary to run it as soon as possible. The encampment was already in progress. It ought to have run Sunday and Monday, and it was Tuesday morning before we got it in operation. If it was to be in shape to accommodate the encampment and the citizens in general, it was necessary that it be got in order as soon as possible. It takes three or four hours to fire it up. The engine and car was in the possession of Mr. Spaulding when it was left in that position last year. I saw Mr. Spaulding every time I wanted coal hauled out to the coal house, and I had the engine to haul out three cars of coal in April. When we left the engine it was then in its customary place. Marshall & Burdick didn't have possession, that I know of." Complainant Newby, after testifying that he had been receiver of Marshall & Burdick since April 10, 1895, and that the property in controversy was placed in his possession by his predecessor, Mr. Bradley, who said: "You will take charge of the things you have here." He called them a reverse lever, lubricator, connecting rods, tools, and headlights. The engine and car were on the tracks belonging to the Watertown and Lake Kampeska Railway Company"—was cross-examined as follows: "Question. When did you file your oath of office as receiver? (By the Court. Objection sustained. Counsel ordered not to ask any more such questions. Exception taken by the respondents. Respondents offered to show that he did not take nor file his oath of office until the 5th day of July, 1895. Objected to by the complainant as incompetent. Objection sustained. Exception

taken by the respondent.) Question. You didn't personally know, did you, that the firm of Marshall & Burdick had any claim against this railroad company? Answer. I know from the books. I can only take the books as I find them. I don't undertake to state whether these charges are correct or not; simply what I find on the books. The engine and car was on the railroad track, in the possession of the receiver of the railroad company on the evening it was taken. The account of $41.80 was and is stricken off the affidavit. It was paid before I signed the affidavit. I would not be positive whether I saw Mr. Case at the time the cars were being moved or not. I saw Eph Allen on the engine. I repaired the engine for the purpose of putting it in shape to run—to be run by whoever the judge dictated should run it. I repaired the engine under the direction of Dr. Spaulding, because he and Case said that Case had seen Judge Andrews. Dr. Spaulding paid for the repairs. I left the engine and car on the company's track after repairing it. Everything was complete. It was not in our shop. It was not in our yards. It was not upon our grounds. As near as I can remember from the books, the account against the company was for 1892 and 1893. I do not know whether my predecessor took any steps to foreclose the lien or not. I do not know anything about the labor and repairs performed prior to my appointment, only by the books. The books are in the safe in the shop of Marshall & Burdick. Question. Did he [Bradley] state to you where the motor and car were? Answer. I could not help but see them. He said, 'Here are some repairs, some extras, that we always take off after running.' Question. What, if anything, did he say with reference to his possession? Answer. I don't remember as to that. I do not think that was discussed. I was not present when certain articles belonging to the engine were left in the shop. There is no record in the books as to why they were left." The foregoing is practically all the evidence offered at the hearing to establish in the re-

ceiver appointed by the state court the possession of the engine and car, and no further evidence was offered tending to prove the existence of a valid and subsisting claim for a lien.

Although it was held in Withers v. State, 36 Ala. 252, and Kane v. Haywood, 66 N. C. 1, that suspension from practice could only follow in a proceeding instituted for that purpose alone, or for disbarment, and that such punishment ought never to be inflicted upon an attorney at law for a contempt of court, we express no opinion thereon, because the question is not essential to a determination of the case before us. The process by which the accused were reached and brought into court, the offense with which they were charged and for which they were tried and convicted and sentenced to pay a fine or suffer imprisonment in one instance, and suspension from the practice of law in the other, are all distinctly and essentially criminal in their character, and in order to sustain a conviction it must appear that the acts committed constitute a contempt of court. State v. Knight, 3 S. D. 509, 54 N. W. 412; State v. Sweetland, 3 S. D. 503, 54 N. W. 415. Persons tried upon such a charge are presumed to be innocent until their guilt beyond a reasonable doubt is established by competent evidence. See 4 Enc. Pl. & Prac. p. 768, and numerous cases from different states collated in the notes. There is no primary evidence that any specific amount was due from the railway company to Marshall & Burdick for repairing the engine or car in dispute; nothing sufficient to show that said property, at the time in question, was in the possession of the receiver, L. A. Newby, or that any agreement had ever been entered into by which to perpetuate the statutory lien notwithstanding the apparent restoration of the property to the railway company, or the receiver thereof appointed by the federal court. From a regardful examination of the entire record, we are unavoidably led to the conclusion that no essential element of the offense charged was established by the evidence. The judgment convicting plaintiffs in error of a contempt of court is therefore reversed, and the trial court is directed to dismiss the proceedings.