## STATE v. KNIGHT *et al.*

1. Contempts of court are of two kinds—civil and criminal. When a party refuses to do something which he is ordered to do for the benefit or advantage of the opposite party, such as disobedience of an order of court for the payment of costs, or nonperformance of the awards of arbitrators, the order is looked upon as a civil execution for the benefit of the injured party, although the proceedings are carried on in the shape of a criminal process; and he stands committed until he complies with the order. The order in such case is not punitive, but coercive.

2. If the contempt consists in doing a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine and imprisonment, or both. This is purely punitive.

3. Under our statutes (sections 7499, 7500, 7502 Comp. Laws) writs of error are used to remove to this court for examination and review the record in all criminal actions, and they are allowed in all criminal cases from the final decisions of inferior courts. Criminal contempt proceedings are properly brought to this court by writ of error.

4. While an appellate court has jurisdiction to review an order punishing for a criminal contempt, so far as to ascertain whether the court inflicting the punishment had jurisdiction, or as to whether the words or acts charged constituted a contempt, yet the decision of the court making it is not to be lightly reviewed. Its judgment should not be reversed unless it is apparent that no contempt has been committed, or that the court exercised its authority in a capricious, oppressive, or arbitrary manner.

5. An injunction order is in a certain sense a *supersedeas* and operates to suspend the proceedings enjoined by it. An attachment for contempt will lie against one to whom the writ is directed, or who has notice of its issuance, if in the face of its restraining force such person proceeds in the matter enjoined.

(Syllabus by the Court. Opinion filed Feb. 15, 1893.)

Error to circuit court, Marshall county. Hon. A. W. CAMPBELL, Judge.

Proceedings by the state against Daniel Knight and Daniel Hubbard to compel defendants to show cause why they should not be punished for contempt for disobeying an order of court. Defendants were adjudged guilty of contempt, and bring error. Affirmed.

The facts are stated in the opinion.

*H. R. Turner* and *Taubman & Potter*, for plaintiffs in error.

A judgment punishing a party for willful disobedience to an order made in a civil case is in its nature a criminal proceeding. New Orleans v. Steamship, 20 Wall. 387; Fuller v. People, 4 Pac. 48; Haight v. Lucian, 36 Wis. 356; Shannon v. State, 18 Wis. 607; State v. Maisdale, 12 Wis. 561; *Id.* v. Brophy, 38 *Id.* 422; *In re* Murphy, 39 Wis. 286; State v. Erwin, 30 W. Va. 404; Boyd v. State, 26 N. W. 927.

A judgment for contempt is reviewable. State v. District, 42 N. W. 598; Gandy v. State, 13 Neb. 445; Cooper v. People, 13 Cal. 337; Meyers v. State, 46 Ohio St. 473; People v. Meyers, 90 N. Y. 407; Matter of Payne, 18 Kan. 72; Haines v. People, 97 Ill. 161; Baltimore v. Wheeling, 3 Grat. 40; Stakely v. Com., 1 La. Cases, 330; Ingle v. State, 6 Blackf. 574; People v. Kelly, 24 N. Y. 74; Harrison v. State, 35 Ark. 458.

The injunctional order and copies of the affidavits on which it is based must be served on defendant personally before he can be held for contempt for its violation. Comp. Laws, § 4986; John-

son v. Superior Ct., 63 Cal. 578; Billings v. Carver, 54 Barb. 40; Dewitt v. Dennis, 30 How. Pr. 131; Becker v. Hager, 8 How. Pr. 68; Euing v. Johnson, 34 *Id.* 202; Johnson v. Casey, 28 *Id.* 492.

*Robert Dollard, Attorney General,* and *J. H. McCoy,* for respondent.

There is no right of appeal from a judgment for contempt. Tyler v. Connolly, 2 Pac. 414; Teller v. People, 4 Pac. 48. Upon a writ of error the court will not review questions of fact. Dean v. Mason, 20 How. 198; 1 Am. & Eng. Ency. Law, 617.

BENNETT, P. J. On the 17th day of October, 1891, an order was made by the judge of the fifth judicial circuit, directed to A. M. Knight, his agents and attorneys, restraining them from making a sale by advertisement of certain mortgaged property. The sale under said foreclosure had been previously fixed for 2 o'clock p. m. on the 17th day of October, at Langford, S. D., distant from the place where the order was made some 50 miles. About 1 o'clock of that day one La Due, the mortgagor in said mortgage, received the following telegram, written upon one of the Western Union Telegraph Company's blanks: "Aberdeen, S. D. 10-17, 1891. To Frank La Due, Langford, S. D.: Have signed order restraining sale under mortgage, Frank La Due to A. M. Knight. A. W. Campbell." A. W. Campbell was the judge of the fifth judicial circuit, but did not sign the telegram officially. This telegram was exhibited to the defendants, Daniel Knight and Daniel Hubbard, the agents of A. M. Knight, a short time before the sale, by La Due, the mortgagor, who requested them to refrain from selling the property. The defendants disregarded the telegram, and proceeded to make the sale. Upon an affidavit setting out these facts the judge made an order requiring the defendants to appear at the January term, 1892, of the circuit court of Marshall county, and show cause why they should not be punished for contempt for willfully disobeying his order. Upon the return day the defendants appeared, and, after hearing the evidence in the case, the defendants were adjudged guilty of contempt, and fined $25 each, and ordered committed to the county jail until said fine was paid. To this order the writ of error is issued.

We are confronted at the threshold with the objection that a writ of error does not lie in a case of this character. If the objection be well taken, it is certainly fatal to this proceeding, and the only order that can properly be made by this court is one dismissing the writ. At common law, judgments of superior courts of record in matters of contempt were final, and not revisable in any other court upon appeal or writ of error. By statute in some states the remedy by appeal and writ of error has been given. There is no good reason, however, in any case that we have examined, why cases of contempt are not subject to review in some manner by an appellate court. *Ex parte* Rowe, 7 Cal. 175; *Ex parte* Langdon, 25 Vt. 680; Railroad Co. v. City of Wheeling, 13 Grat. 40; Stuart v. People, 3 Scam. 395; Yates v. People, 6 Johns. 337. The power to punish for contempt is one of the highest prerogatives of a court of justice, and is inherent in it. Without it the citizen would be without protection or security, and upon its bold and prudent exercise depend the respect, the dignity, and efficiency of courts of justice as arbiters of human rights. The mandates of a court must in all cases be obeyed. Cossart v. State, 14 Ark. 541; *Ex parte* Robinson, 19 Wall. 505; *Ex parte* Smith, 28 Ind. 47; *In re* Moore, 63 N. C. 397; State v. Earl, 41 Ind. 464; Taylor v. Moffitt, 2 Blackf. 305; People v. Pirfenbrink, 96 Ill. 68. If wrong be done a citizen by error of facts or judgment in the exercise of this power, there must be some channel of redress provided by law to rectify the wrong. In the absence of statutory enactments, there must be some tribunal to review and correct this error, and some road leading to that tribunal which aggrieved parties may take to reach it. The practice of bringing up for the consideration of appellate courts contempt proceedings by writ of error to the final judgment has been allowed in many of the states. See cases cited above; Winkelman v. People, 50 Ill. 449; Butler v. People, 2 Colo. 295; Storey v. People, 79 Ill. 45; Myers v. State, (Ohio Sup.) 22 N. E. Rep. 43; Wyatt v. People, (Colo. Sup.) 28 Pac. Rep. 961. In other states the writs of *certiorari* and *habeas corpus* have been resorted to. State v. District Court, (Minn.) 42 N. W. Rep. 598; State v. Webber, (Minn.) 37 N. W. Rep. 949; *In re* Fanning, (Minn.) 41 N. W. Rep. 1076; Batchelder v. Moore, 42 Cal. 413. But under our

statute it would seem that the writ of error was the most appro-
priate mode to reach the desired end.  Under the common law
writs of error were considered writs of right, and issued of course
in all criminal cases not capital.  In capital criminal cases it was
a writ of grace, and issued on motion or petition.  See Yates v.
People, 6 Johns. 372, where a large number of cases are cited, and
an able and extensive exposition of proceedings in contempt is
made by the court.  Under our statute, writs of error are used to
remove to this court, for examination and review, the record in
criminal actions; these writs to be allowed in all cases from the
final decisions of inferior courts, under such regulations as are
prescribed by law.  The writ may be sued out by the defendant
from a final judgment of conviction, from an order refusing a mo-
tion in arrest of judgment, or from an order refusing a new trial.
See sections 7499, 7500, 7502, Comp. Laws.  The question of review
by writ of error would then seem to rest upon the proposition as
to whether contempt of court is a specific criminal offense or not.
It is no doubt true that attachment for contempt is sometimes re-
garded as process in a civil action.

Blackstone (in book 4, c. 20) treats of contempt under the head
of "Summary Convictions."  They are classed with other misde-
meanors, from which they are distinguished only by the mode in
which they are prosecuted; every superior court being necessarily
invested with jurisdiction to punish contempt of its authority by
summary process.  After enumerating the different species of con-
tempt, he mentions "those committed by parties to any suit or
proceeding before the court, as by disobedience of any rule or
order made in the progress of a cause, by nonpayment of costs
awarded by the court upon a motion, or by nonobservance of
awards duly made by arbitrators or umpires, after having entered
into a rule for submitting to such determination.  Indeed, the at-
tachment for most of the species of contempt, and especially for
nonpayment of costs and nonperformance of awards, is to be looked
upon rather as a civil execution for the benefit of the injured party,
though carried on in the shape of a criminal process of contempt
of the authority of the court; and therefore it hath been held that
such contempt, and process thereon, being properly the civil rem-

33—S. D.

edy of individuals for a private injury, are not released or affected by the general act of pardon." Then by a parity of reasoning it would seem that civil contempts would be appealable under the provision of the statute regulating appeals. But the question remains whether the contempt alleged against the plaintiffs in error in the case at bar is one of these. It arose in the alleged disobedience of an injunction order restraining the plaintiffs in error from foreclosing a mortgage, and so far it would probably come within those classes of cases described by Blackstone in the above quotation. His language is "most of the species," and the examples given in illustration are of nonpayment of costs and nonperformance of awards. These examples clearly indicate the criterion by which it may be determined whether the process is civil or criminal. If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court. If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the state alone is interested in the enforcement of the penalty, it being a punishment which operates *in terrorem*, and by that means has a tendency to prevent a repetition of the offense in other similar cases. This rule, as definitely stated, has not been expressly recognized by any case coming under our observation, but is consistent with all the decisions. New Orleans v. Steamship Co., 20 Wall. 387; Railroad Co. v. Wheeling, 13 Grat. 57; *Ex parte* Kearney, 7 Wheat. 38; Stuart v. People, 3 Scam. 395; *Ex parte* Thatcher, 2 Gilman, 170; Crook v. People, 16 Ill. 536.

In the case of *Ex parte* Thatcher, *supra*, Justice SCATES said: "It is indeed denied that any appeal or writ of error lies from its judgment for contempt by any court. I will not undertake to de-

cide the general question, but the power has its limits. The court may not treat any and every act as a contempt, and I have no doubt that the appellate court may revise and reverse its judgment when it exceeds its jurisdiction by treating that as a contempt which in law is no contempt, and cannot be. The supervision will be to ascertain that fact." This case was brought to the supreme court by writ of error. In the case of New Orleans v. Steamship Co., Judge SWAYNE, in "delivering the opinion of the court, said: "Contempt is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion,"—and dismissed the writ of error because the supreme court had no jurisdiction to review a criminal offense. Railroad Co. v. Wheeling, supra, was a case brought to the supreme court; the defendant having been fined for contempt in disobeying an interlocutory order made in a case. The court said: "A contempt of court is in the nature of a criminal offense, and the proceeding for its punishment is in the nature of a criminal proceeding. The judgment in such a proceeding can be reviewed by a superior tribunal only by writ of error, and not always in that way." To the same effect, see Fischer v. Hayes, 6 Fed. Rep. 63. The case at bar, under the rule above announced, presents a contempt proceeding in the nature of a criminal action, and we think it was properly brought to this court by writ of error. Consequently the objection made by the attorney general cannot be sustained. The cases of Hayes v. Fischer, 102 U. S. 121. *Ex parte* Kearney, 7 Wheat. 38, and New Orleans v. Steamship Co., 20 Wall. 387, cited by the attorney general, while sustaining the position that contempt proceedings are criminal in their nature, and for that reason the supreme court of the United States would not take jurisdiction of them, do not decide that writ of error was not the proper process for bringing up the cases for review, and they are not proper authorities to sustain the objection that this is not the proper remedy.

Having held that, writ of error is the proper mode of bringing up for review criminal contempt proceedings, the next question is, to what extent will such proceedings be reviewed? It seems to be well settled that contempt orders or judgments, while not ordinarily reversible for mere error, may be set aside for want of jurisdiction of the court over the subject-matter or the defendant, or for want of power to render the particular judgment or the order complained of. *Ex parte* Reed, 100 U. S. 13 23; Hayne, New Trials & App. § 198; 2 Bish. Crim. Law, § 268; Vilas v. Burton, 27 Vt. 56; People v. Kelly, 24 N. Y. 74; Phillips v. Welch, 11 Nev. 188; State v. Galloway, 5 Cold. 337. Bishop, in the section cited, *supra*, says: "It is not within the plan of this volume to discuss questions of practice, yet it may be observed that the very nature of contempt compels the court against which it is committed to proceed against it, and, if the court has jurisdiction, precludes any other or superior tribunal from taking cognizance of it, whether directly on an appeal, or otherwise. Under peculiar provisions of law, however, in some of the states, and the pressure of modern opinion, the superior courts do in a measure—not fully—correct errors of the inferior ones in the matter." In Vilas v. Burton, *supra*, it is said: "The English courts have always held that proceedings for contempt in one court, when the court has jurisdiction of the subject-matter and of the parties, are not revisable in any other court. * * * And no cases are brought to light where such proceedings in the superior court have ordinarily been held revisable, unless when the proceedings were so irregular as to be against the law, and to give the court no proper jurisdiction." In the case of People v. Kelly, above cited, the court said: "The question whether the alleged offender really committed the act charged will be conclusively determined by the order or judgment of the court, and so with equivocal acts, which may be culpable or innocent, according to circumstances; but, when the act is necessarily innocent or justifiable, it would be preposterous to hold it a cause of imprisonment." In Phillips v. Welch, *supra*, it was held that the review must be limited to the question of jurisdiction, and that no error of fact or law not jurisdictional in character could be considered. These decisions are in harmony with the decision in California. *Ex parte* Perkins, 18 Cal. 60; People v. O'Neil, 47 Cal.

109; Roe v. Superior Court, 60 Cal. 93; Hayne, New Trials & App. 198. See, also, Romeyn v. Caplis, 17 Mich. 455.

While we have jurisdiction to review an order punishing for a criminal contempt, so far as to ascertain whether the court inflicting the punishment had jurisdiction, and as to whether the words or acts charged constitute a contempt, yet the decision of the court making it is not to be lightly reversed. It ought not to be reviewed unless it is apparent that no contempt has been committed, or that the court exercised its authority in a capricious, oppressive, or arbitrary manner. A case might arise, even if the court has jurisdiction, where the acts alleged as a contempt were not contemptuous, nor intended to be. In the case at bar there can be no doubt the court below had jurisdiction to punish for contempt a person who willfully and intentionally violated an order of court restraining and forbidding a sale of property under a mortgage foreclosure. The only question, then, arising in this case is whether the act of the plaintiffs in error constitutes a contempt. The record shows that such an order was made, and it is alleged that it was brought to the knowledge of the plaintiffs in error, restraining the sale under the mortgage of Frank La Due to A. M. Knight; yet in the face of this knowledge these plaintiffs in error did proceed to make the sale. But it is said the manner in which this was communicated to them did not import to them such a legal notice as they were bound to respect. If we were inclined to agree with this view from the evidence, we think, under the rule above announced, we would not be justified in reversing a court which had found as a matter of fact to the contrary. The judgment of the court recites, after hearing the affidavits of several parties and the argument of counsel, that the plaintiffs in error did willfully and knowingly violate the injunction order, and are guilty of contempt. This finding of fact, when based upon conflicting testimony or upon testimony which is susceptible of more than one construction, will not be set aside by an appellate court. The plaintiffs in error admit the receipt of the telegram stating an order had been made restraining them from proceeding with the sale. This was received before the sale had taken place. They do not deny that they knew that A. W. Campbell was the judge

of the circuit court of the county in which the sale was to take place. If any doubts existed as to the genuineness of the telegram, there could have been no serious consequences following a postponement of the sale until such time as this could have been ascertained, and it was their duty to have done so. Not having done so, as reasonable men would have done, the consequence must follow. The judgment of the court below is affirmed. All the judges concur.