(No. 21697.—

THE PEOPLE *ex rel.* Thomas J. Courtney, Relator, *vs.* THE ASSOCIATION OF REAL ESTATE TAX-PAYERS OF ILLINOIS, Respondent.

*Opinion filed October 21, 1933—Rehearing denied Dec. 7, 1933.*

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for relator.

WATKINS & TENHOOR, for respondent.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is an original proceeding by information in the name of the People, by John A. Swanson, State's attorney of Cook county, for whom Thomas J. Courtney, his successor, was substituted as relator, against the Association of Real Estate Tax-payers of Illinois, a corporation organized not for profit, as respondent, seeking to have the respondent punished for contempt of this court for engaging in the practice of law and also to enjoin it from continuing such practice. Leave to file the information was granted, a rule was entered requiring the respondent to answer, and it filed its answer, and the cause was referred to Roswell B. Mason, a master in chancery of the circuit court of Cook county, as commissioner of this court, to take the evidence and report his conclusions of fact and law. The commissioner heard the evidence and submitted his report recommending that the relief prayed be denied and finding that the respondent had not engaged in the practice of law. Five objections were filed by the relator to the report of the commissioner and were by him overruled, which objections were ordered to stand as exceptions in this court. After the filing of the report, briefs were filed on behalf of both parties.

The facts in this case are, that the respondent is an Illinois corporation organized May 9, 1930, under the Illinois laws, as a corporation not for profit. Its objects as stated in its articles of incorporation are as follows: "The object of this corporation is to establish an organization with which all Illinois real estate tax-payers may become affiliated to permit united protection for themselves in matters of taxation and legislation and to prevent an inequitable distribution of tax burdens on real estate and all incidentals thereto pertaining." It appears that thirty-three owners of large amounts of real estate in Cook county donated $50,000 towards the furtherance of the objects of

the corporation. Officers were elected and an executive secretary or director was employed. Representatives of the respondent appeared before the General Assembly and unsuccessfully sought the adoption of a funding program for the Cook county taxes for the year 1929 by the issuance of twenty-year bonds. In 1930 the respondent's representatives unsuccessfully sought re-assessment of personal property in Cook county at the hands of the Illinois State Tax Commission. Early in 1931 respondent's executive committee voted to seek recourse in the courts from the real estate taxes in said county, which they believed to be burdensome. It was then decided to invite owners of real estate, generally, in said county to become members of the association. Membership cost was fixed at one per cent of the amount of taxes assessed for the year 1929 on real estate owned by an applicant, together with legal fees of five dollars on each tax bill of $200 or less and ten dollars on each tax bill in excess of $200, with a minimum membership fee of two dollars, and 200,000 membership blanks were distributed to owners of real estate in said county on or about April 1, 1931. Approximately $75,000 was paid the association by 4800 applicants for membership using the blanks above mentioned, and no fees or commissions were paid for securing these applications for membership. About November 1, 1931, the respondent distributed 500,-000 circulars entitled, "The Tax Strikers," which called the attention of the Cook county real estate tax-payers to the fact that personal property was not bearing its proper proportion of the tax burden. About February 15, 1932, the respondent distributed 500,000 membership application blanks for the listing of real estate with it for litigation in respect to the 1930 taxes thereon. Upwards of 23,000 taxpayers in Cook county made application for membership and paid the respondent approximately $350,000 in membership fees. February 1, 1931, the respondent employed attorneys to represent it in all litigation on behalf of its

members in respect to the validity of the 1929 taxes. Nine suits, each in the names of individual members of the association, were filed by the association through its attorneys, some of which, on appeal, have reached the Appellate Court and this court. Services were rendered by the respondent's attorneys which it is stipulated were reasonably worth and would have cost an individual client $200,000. Each of these suits sought to attack the validity of the taxes for the year 1929 or the year 1930. All expenses of this litigation, including court costs and attorneys' fees, were paid by the respondent. The attorneys representing those members of the respondent whose names were used, were selected, employed, directed and paid by the respondent. The respondent determined all questions which were to be litigated. About April 1, 1932, the respondent distributed in Cook county 500,000 copies of a printed circular entitled, "Association Still Listing Property," and also distributed about that time 500,000 cards entitled, "New Radio Broadcast Schedule." About May 19, 1932, the respondent distributed 500,000 of a 24-page booklet entitled, "Accomplishment—The Remarkable Record of an Unusual Institution —A Summary of Two Years' Activities." In addition, the executive secretary of the respondent made talks, in accordance with a regular schedule, from two radio stations, and about January 20, 1931, the respondent distributed approximately 500,000 copies of a circular entitled, "Sixteen Billion Dollars."

Such statements as the following were contained in the application blanks and pamphlets aforesaid:

"The Association of Real Estate Tax-payers is prosecuting suits in both the county and State courts. Properties must be protected from forfeitures and tax sales until the validity of the tax is established by a ruling of the Supreme Court. All members of the association for a nominal legal fee can obtain efficient protection from tax sale or forfeiture for delinquencies. * * * The additional

legal fee is five dollars on each tax bill of $200 or less; $10 on each tax bill in excess of $200. The cost of membership in the association is one per cent of your latest tax bill, with a minimum fee of two dollars. * * * The tocsin call is sounded. Other forms of wealth are powerfully organized. We need your support and that of every real estate tax-payer you know."

"For more than fourteen months the association has been continuously prosecuting its tax cases in various county and State courts. At the present time there are two of our cases awaiting decisions in the Supreme Court of Illinois. If necessary the association will carry these cases to the Supreme Court of the United States for a final decision. All members will share, without further charge, in any and all benefits resulting from the settling of these vital issues for the year property is listed in these cases. Pending a final decision the association will endeavor to secure adequate protection for all properties of its members that have been properly listed, from judgment, tax sale or forfeiture for the 1930 tax. Free information bureau, open 9 :00 A. M. to 6 :00 P. M., will endeavor to assist property owners and answer questions on tax matters."

(Membership blank.) "I hereby make application for membership in the Association of Real Estate Tax-payers of Illinois. I hereby authorize the association to act on my behalf and employ counsel to represent me, who may use my name in any legal action the association shall direct or deem necessary in its efforts to protect the properties listed herein from tax sale or forfeiture, and to take such action as it may deem desirable to prevent the collection of any inequitable, illegal or exorbitant tax levied against the properties listed herein for the year 1930."

"The association now has before the Supreme Court of Illinois three cases. * * * We are quite confident of ultimately obtaining favorable decisions in these and other suits that will have to be filed. Accept our assurance that

whenever there is any possibility of endangering your property interest we shall immediately advise you."

"The association on December 12, 1930, demanded a re-assessment of the personal property of Cook county. On February 13, 1931, the association filed a petition in the superior court asking for a writ of *mandamus* to compel the board of review to hear the complaints of tax-payers."

"The attorneys for the association went into the circuit court of Cook county and asked for a temporary injunction restraining the county treasurer from taking any action in connection with the advertising * * * of the properties of members of the association on the basis of fraudulency of the roll."

"The association had been very active in regard to the 1930 taxes. * * * Later the association filed an injunction suit against the board of assessors asking the board of assessors not to turn over the books to the board of review unless these complainants had been heard and seeking to enjoin the board of review from spending any money in their operations until such time as these hearings had been held. The injunction was denied. The association filed a formal protest demanding the assessment by the board of review of certain enumerated properties that had been omitted from the rolls. * * * The association, through its attorneys, went into the superior court and petitioned for a writ of *mandamus* ordering the board of review to place the indicated omitted property on the rolls. * * * On January 11, 1932, Judge Williams signed a writ of *mandamus* ordering the board of review to place $16,000,000,000 of omitted property on the rolls. The case was appealed by the attorneys for the board of review and is now before the Supreme Court of Illinois awaiting adjudication. * * * Since January 11, 1932, the association has taken the position that until such time as the Williams *mandamus* writ is reversed there is no valid tax roll in Cook county. As a consequence we have advised tax-payers to pay no part of

the 1930 assessment until the court of last resort rules on the validity of the tax."

It was stipulated as follows: "The expenditure for attorneys' fees, various counsel, court costs, printing and other expenses incident to the preparation and presentation in the courts of nine legal actions, involving 76,343 separate parcels of real estate, paid by the association, and various other legal services rendered to the association from April 15, 1930, to October 15, 1932, totaled $154,881.33. On said last mentioned date the association held in its treasury the sum of $192,893.17. * * * A reasonable charge to one individual had he brought the nine legal actions in respect to taxes on his real estate and had he himself borne all the attorneys' fees and other expenses would have been $200,000. * * * The average fee paid for membership and representation as to real estate by each of the 4800 persons who joined the association and listed their property with it in respect to the 1929 taxes was $14.50. The average fee paid for membership and representation as to real estate by each of the 23,000 persons who joined the association and listed their properties with it in respect to the 1930 taxes was $15.50."

The first application for membership, a blank circulated as aforesaid by the association, contained the following: "I hereby make application for membership in your association and authorize you to represent me, through your attorneys, * * * in all court actions they deem necessary to protect my property from tax sale or forfeiture, pending the decision of the courts on the validity of the 1929 assessment."

The question presented to this court is whether or not the respondent is in contempt of this court by having engaged in the practice of law. It is well settled law that this court has jurisdiction and may in an original proceeding punish both natural persons or corporations engaging in the unauthorized practice of the law, for contempt. (*Peo-*

*ple* v. *Peoples Stock Yards State Bank,* 344 Ill. 462.) That relation of trust and confidence essential to the relation of attorney and client did not exist between the members of the respondent association and its attorneys, and whatever relation of trust and confidence existed was between the membership and the association. Parties complainant were made so without their being consulted, from aught that appears in the record, beyond the agency created by the signature of a member on the application blank. The services which, by its statements and advertisements, the respondent held itself out to the general tax-paying public as being ready and willing to render, and which the facts show it did render, were such services, in part at least, as could be rendered only by one engaged in the practice of the law. Whether the money remaining in the respondent's hands at the time of the filing of the information in this case was a profit to the respondent or to the members thereof is, at most, only one of the circumstances and facts in the case. Whether the acts of the respondent in soliciting membership and promoting litigation is in violation of any provision of the Criminal Code of Illinois is not decisive in this case. Whether any other form of association, partnership or corporation not formed for profit, or one formed for profit, might cause services to be rendered to individual members or stockholders, lawfully, is not the question this court is concerned with in this case. Much that was said in *People* v. *Peoples Stock Yards State Bank, supra,* is controlling in this case as to the question of the respondent's having practiced law. In that decision this court said, among other things: "Practicing as an attorney or counselor at law according to the laws and customs of our courts is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill. * * * According to the generally understood definition of the prac-

tice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all action taken for them in matters connected with the law. * * * Respondent in the present case has, beyond question, deliberately engaged in unauthorized practice of the law. * * * That it used for that purpose the services of licensed attorneys in its employ does not alter the fact that it was thus practicing law. * * * Even in a case where no money consideration is derived from such services the court may fix a punishment suitable to the circumstances of the offense."

While the legislature of our State has fixed a penalty for the unlawful practice of law, yet the legislature can not exempt any person, legal or natural, from prosecution for contempt for engaging in the practice of law. To practice law a person must comply with the requirements laid down by this court. (*In re Day*, 181 Ill. 73.) It is well settled that no corporation can be licensed to practice law. The fact that the respondent was a corporation organized not for profit does not vary the rule.

It is the opinion of this court that the exceptions to the learned commissioner's report should be, and they are hereby, sustained, and that the prayer of the information filed in this cause should be, and the same is hereby, granted. It is therefore ordered that the respondent, the Association of Real Estate Tax-payers of Illinois, a corporation, be held in contempt of this court and that it pay to the clerk of this court a fine of $2500 and costs of this suit.

*Respondent found guilty of contempt.*