STATE, Respondent, v. THE AMERICAN-NEWS COMPANY, et al, Appellants.

(253 N. W. 492.)

(File No. 7526.   Opinion filed March 6, 1934.)

*Hepperle & Fuller,* of Aberdeen, *Morrison & Skaug* of Mobridge, and *Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* of St. Paul, Minn., for Appellants.

*Geo. H. Fletcher, B. A. Walton, Geo. W. Crane,* and *E. B. Harkin,* all of Aberdeen, for the State.

ROBERTS, P. J.   The defendant the American-News Company, engaged in the publication of three daily newspapers in the city of Aberdeen, S. D., James A. Mathews, president of the company, and Howard Anderson, editor, were adjudged guilty of contempt by the circuit court in and for Brown county.   The proceeding is based on an affidavit of three members of the bar engaged in the practice at Aberdeen, alleging, in substance, that the defendants willfully and maliciously, with the intent and purpose of embarrassing, obstructing, and intimidating the court and the officers thereof in the due administration of justice in a case entitled State v. Royal A. Hasse and other cases then pending, and with the further intent and purpose of preventing a fair and impartial trial and disposition in each of such cases, published the articles set forth in the affidavit.   We need not here state the contents of the publications.   After denial by the court of motions to discharge the attachment and quash the affidavit and overruling of demurrers, each of the defendants interposed an answer to the allegations contained in the affidavit for contempt.   The defendants

specifically deny that the newspaper articles were published concerning any pending trial or were intended to influence, intimidate, or embarrass the court in the trial of any case or were intended to influence public opinion against the court or the judge thereof or to bring either into contempt or disrepute. The cause proceeded to a hearing upon the affidavit and answers, and the court thereafter entered findings of fact and conclusions of law. The court found the facts substantially as alleged in the affidavit upon which the attachment for contempt was issued, and that the publication of the newspaper articles by the defendants was willful and contemptuous, and that their circulation was intended by the defendants to impede and embarrass the circuit court in the due administration of justice in the criminal cases mentioned in the affidavit. As punishment for its contempt, the court imposed a fine of $200 upon the defendant the American-News Company, and a sentence of thirty days in the county jail and a fine of $200 upon each of the other two defendants. The jail sentences were suspended during good behavior and until the further order of the court. From the judgment so entered and from an order denying motion for new trial, the defendants have filed with the clerk of this court a notice of appeal.

■ ■   Motion is made to dismiss the appeal on the ground that the judgment and order are not reviewable in this court. At common law the exercise by a court of competent jurisdiction of the power to punish for contempt could not be reviewed. 13 C. J. 97, § 155. In Crosby's Case, 3 Wils. K. B. 189, 95 Eng, Rep. Reprint 1005 at page 1014, Mr. Justice Blackstone said: "The sole adjudication of contempts, and the punishment thereof, in any manner, belongs exclusively and without interfering to each respective court." In Vilas v. Burton, 27 Vt. 56, it is said: "Proceedings for contempt in one court * * * are not revisable in any other court. * * * If it be said that a power to punish at discretion is a dangerous power to trust to a single magistrate, however high, we can only say, it is one which the law of England has always seen fit to repose there, * * * and one which, in these times, ordinarily, is very little liable to abuse." Recognizing this rule, courts of some states deny the right of appeal in such proceedings, but the right has been gradually extended by statutes or judicial construction until now, generally, a judgment in contempt

can be reviewed either by an appeal or on writ of error. 6 R. C. L. 538, 539, § 51; R. C. L. Perm. Supp. p. 1758.

█ Proceedings for contempt may be instituted either for the purpose of preserving the power and vindicating the dignity of the court or to enforce the rights of private parties and to compel obedience to lawful orders and decrees made for that purpose. Such proceedings are of two kinds which have been designated as "criminal contempts" and "civil contempts." This distinction is clearly stated in Re Nevitt (C. C. 'A.) 117 F. 448, 458: "Proceedings for contempts are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 A. 182; Hendryx v. Fitzpatrick (C. C.) 19 F. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer & Terminer, 101 N. Y. 245, 247, 4 N. E. 259, 54 Am. Rep. 691; Phillips v. Welch, 11 Nev. 187, 190; State v. Knight, 3 S. D. 509, 513, 54 N. W. 412, 44 Am. St. Rep. 809; People v. McKane, 78 Hun, 154, 160, 28 N. Y. S. 981; 4 Bl. Comm. 285; 7 Am. & Eng. Enc. Law, 68. A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

In the case of State v. Knight, 3 S. D. 509, 54 N. W. 412, 413, 44 Am. St. Rep. 809, cited by Judge Sanborn in Re Nevitt, supra, this court said: "If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coersive, to compel him to act in accordance with the order of the court, If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the state alone is interested in the enforcement of the penalty, it being a punishment which operates in terrorem, and by that means has a tendency to prevent a repetition of the offense in other similar cases."

In Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 S. Ct. 665, 667, 48 L. Ed. 997, the court, after quoting with approval the above statement from Re Nevitt, supra, distinguishing the two kinds of contempt and stating that "doubtless the distinction referred to in this quotation is the cause of the difference in the rulings of various state courts as to the right of review," discusses the distinguishing features of the two kinds of contempts: "A contempt proceeding is sui generis. It is criminal in its nature, in that the party is charged with doing something forbidden, and, if found guilty, is punished. * * * Manifestly, if one inside of a court room disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court; yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature. On the other hand, if, in the progress of a suit, a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt

proceeding. The punishment is to secure to the adverse party the right which the court has awarded to him. He is the one primarily interested, and if it should turn out, on appeal from the final decree in the case, that the original order was erroneous, there would, in most cases, be great propriety in setting aside the punishment which was imposed for disobeying an order to which the adverse party was not entitled. It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determined feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party. In the case at bar the controversy between the parties to the suit was settled by final decree, and from that decree, so far as appears, no appeal was taken. An appeal from it would not have brought up the proceeding against the petitioner, for he was not a party to the suit. Yet, being no party to the suit he was found guilty of an act in resistance of the order of the court. His case, therefore, comes more fully within the punitive than the remedial class. It should be regarded like misconduct in a court room or disobedience of a subpœna, as among those acts primarily directed against the power of the court."

The contemner in the Bessette Case sought a review of the judgment by a circuit court of appeals, and the Supreme Court held that under a statute conferring on circuit courts of appeals jurisdiction to review decisions in criminal cases he had the right to have the judgment reviewed by writ of error. Respecting the right of review, the court said: "Whether the circuit courts of appeals have authority to review proceedings in contempt in the district and circuit courts depends upon the question whether such proceedings are criminal cases. That they are criminal in their nature has been constantly affirmed. The orders imposing punishment are final. Why, then, should they not be reviewed as final decisions in other criminal cases? It is true they are peculiar in some respects, rightfully styled sui generis. They are triable only by the court against whose authority the contempts are charged.

No jury passes upon the facts; no other court inquires into the charge. * * * But the mode of trial does not change the nature of the proceeding, or take away the finality of the decision. * * * Considering only such cases of contempt as the present—that is, cases in which the proceedings are against one not a party to the suit, and cannot be regarded as interlocutory—we are of opinion that there is a right of review in the circuit court of appeals. Such review must, according to the settled law of this court, be by writ of error."

In Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 498, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the distinction between contempts was again considered: "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. * * * The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the court's authority, or whether it is remedial, by way of a coercive imprisonment, or a compensatory fine, payable to the complainant."

In an opinion by Chief Justice Taft in Ex parte Grossman, 267 U. S. 87, 45 S. Ct. 332, 334, 69 L. Ed. 527, 38 A. L. R. 131, the distinction between contempts is stated as follows: "For civil contempts, the punishment is remedial and for the benefit of the complainant. * * * For criminal contempts the sentence is punitive in the public interest to vindicate the authority of the Court

and to deter other like derelictions." See, also, Staley v. South Jersey Realty Co., 83 N. J. Eq. 300, 90 A. 1042, L. R. A. 1917B, 113, Ann. Cas. 1916B, 955; People v. Peters, 305 Ill. 223, 137 N. E. 118, 26 A. L. R. 16; State v. Magee Publishing Co., 29 N. M. 455, 224 P. 1028, 38 A. L. R. 142; Ex parte Gudenoge, 2 Okl. Cr. 110, 100 P. 39; Ex parte Morris, 194 Cal. 63, 227 P. 914.

While the line of division between civil and criminal contempt is not always easily determined, since a particular act may partake of the characteristics of each, the instant case presents no difficulty. Applying the distinction pointed out by the authorities referred to, it is clear that the nature of the proceeding sought to be reviewed is a criminal contempt. The proceeding was instituted for the purpose of punishing the defendants for an alleged offense committed directly against the authority and dignity of the court.

The question of right of appeal in criminal contempt proceedings was first considered by this court in State v. Knight, supra. Under the then existing statute, records in criminal actions could be removed to this court for examination and review on writs of error. Section 7499, Comp. Laws. The nature of the proceeding was the determinative point in the decision. It was there said: "The case at bar * * * presents a contempt proceeding in the nature of a criminal action, and we think it was properly brought to this court by writ of error. Consequently the objection made by the attorney general cannot be sustained."

The same question was presented in State v. Sweetland, 3 S. D. 503, 54 N. W. 415, 416. Defendant there named was adjudged guilty of contempt, and sought a review in this court by writ of error. Denying motion to dismiss, this court said: "A preliminary motion was made to dismiss the writ of error upon the ground that a judgment for contempt cannot be brought to this court for review by such writ. This court has, however, decided in the case of State v. Knight [3 S. D. 509], 54 N. W. 412 [44 Am. St. Rep. 809], that a final judgment in proceedings for a criminal contempt may be brought to this court by such writ. Following the decision in that case, the motion to dismiss is denied."

In its inception, the instant proceeding was not prosecuted in the name of the state by indictment, presentment, or information. The affidavit and attachment for contempt are not entitled in a criminal action, but the judgment is entitled, "State of

South Dakota, Plaintiff, v. The American-News Company et al, Defendants." This court in Freeman v. City of Huron, 8 S. D. 435, 66 N. W. 928, considered the question of procedure in a criminal contempt proceeding arising in connection with a civil action, and there suggested that "it would be better practice to institute an independent action in the name of the state, and assimilate the proceeding to the criminal procedure as nearly as practicable." But practice, at least in the absence of statute, does not require that the state be a party plaintiff when the power to punish for contempt inheres in the court. The summary power to punish for contempts tending to obstruct or degrade the administration of justice is a necessary attribute of a court of record. Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Watson v. Williams, 36 Miss. 331; Cartwright's Case, 114 Mass. 230. Courts of this state have not been deprived of such inherent power by the Constitution. In re Ewert, 48 S. D. 140, 203 N. W. 202. Counsel contend that, since the contempt charged was not for a public offense defined by statute and was not prosecuted pursuant to the procedure prescribed under the title of Criminal Procedure in the Revised Code, an appeal from a judgment or order in such proceedings connot be taken under section 5031. Section 2093, Rev. Code 1919, provides: "Actions are of two kinds: 1. Civil. 2. Criminal." Section 2094, Rev. Code 1919, provides: "A criminal action is one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof." And section 2095, Rev. Code 1919, provides: "Every other is a civil action. * * *" The scope of the provisions of section 2094 (section 4814, Comp. Laws) was not considered in State v. Knight, supra, and counsel earnestly urge that we reconsider the holding in that case in the light of such statutory provisions. It must be conceded that this is not strictly a criminal action against the defendant named within the meaning of section 2094 or in the sense that all provisions of our statutes in regard to criminal procedure are applicable. In a broad sense, however, as appears from the authorities and decisions referred to, where the punishment is solely for the vindication of the authority and dignity of the court, the prosecution of an offender is in the nature of a criminal action.

The statute construed in the Knight Case authorized the issuance of a writ of error to remove to this court a record "in a

criminal action" for review. Section 7499, Comp. Laws. It is not, however, necessary to a decision on the motion before us to consider contention of counsel. Whatever may have been the statutory authority of this court to review upon writ of error a judgment or order in a criminal contempt proceeding in view of the definition of a "criminal action" in section 2094 (section 4814, Comp. Laws), present statutory provisions do not confine appeals to judgments and orders in criminal actions. Sections 5030 and 5031, Rev. Code 1919, provide:

"§ 5030. *Writs of Error Abolished, Appeal Substituted.* Writs of error in criminal actions and proceedings are abolished and the orders and judgments of circuit, county and municipal courts in criminal actions and proceedings may be reviewed on appeal to the supreme court in the manner provided by this chapter.

"§ 5031. *Orders and Judgments Reviewable on Appeal by Defendant.* An appeal to the supreme court may be taken by the defendant from the following judgments and orders rendered and entered by the circuit, county and municipal courts of the state: 1. From a final judgment of conviction. 2. From an order refusing a motion in arrest of judgment. 3. From an order refusing a motion for a new trial."

This is not strictly a criminal action, as we have stated, in the sense that such action is prosecuted by the state against a person for a public offense. It is, however, a criminal proceeding, and the adjudication is a judgment of conviction.

The motion to dismiss is denied.

All the Judges concur.