STATE, ex rel. RICE, et al., Appellants, v. COZAD,
Respondent

(16 N. W.2d 484.)

(File No. 8664.   Opinion filed November 20, 1944.)

**Gale B. Braithwaite,** of Sioux Falls, for Appellants.
**David F. Heffron,** of Martin, and **W. J. Hooper,** of Gregory for Respondent.

SMITH, J.  The relator, the chairman of the Unauthorized Practice of Law Committee of the State Bar, asserting

authority "to bring this proceeding for and on behalf of the State Bar and the members thereof and for and on behalf of the people of the State of South Dakota," prayed for an injunction restraining the defendant, a layman, from practicing law and for an adjudication that described conduct of defendant constituted contempt of court. By motion and by answer the defendant asserted that the complaint, or information, "does not state facts sufficient to constitute a cause of action," and by answer specifically denied the authority of the relator to bring the proceeding on behalf of the people of the state. The issues thus raised were considered in connection with a trial of the merits. Thereafter the learned trial court ruled against defendant on the described issues of law, but entered judgment for defendant on the merits on the theory that his evidenced conduct did not amount to the practice of law. In answer to the appeal of the plaintiff, the defendant presents the above described adverse rulings of the trial court in support of his judgment. In our opinion the exceptions of the defendant were well taken and are determinative of the appeal.

█ That the defendant may urge the described objections to sustain his judgment is conceded by appellant and we so hold. 5 C. J. S., Appeal and Error, 168, § 1498.

█ We think we need not pause to consider the substance of the argument of defendant in so far as it treats with the jurisdiction of the circuit court to deal with the unauthorized practice of law as contempt of court. If such is the character of the proceeding, the judgment for defendant must stand. In the case of State v. American-News Co., 62 S. D. 456, 253 N. W. 492, it was held that the right of appeal in a proceeding for a criminal contempt is governed by the statute dealing with appeals in criminal actions. In such actions, the state is not accorded a right of appeal in the instant circumstances. SDC 34.4101. If the alleged conduct constitutes contempt of the circuit court, it must be classified as a criminal contempt. State v. American-News Co., supra, and State v. Fletcher Trust Co., 211 Ind. 27, 5 N. E. 2d. 538.

The plaintiff, however, insists that the proceeding is equitable in character and that the allegation and prayer

dealing with contempt were included by inadvertence. The action was instituted below by summons and complaint, and was tried as a suit for an injunction, and we review it as such.

·The defendant questions (1) the availability of the equitable remedy of injunction to prevent the unauthorized practice of law, and (2) the authority of the relator to represent the state or the public.

The major premise of defendant's argument on the ground first noted supra is that the preventive equitable jurisdiction of the circuit court is limited to the protection of property rights; its minor premise is that as the right to practice law is not a property·right, the property rights of the relator, and of licensed practitioners as members of a class are not violated: and his conclusion is that neither the alleged or established facts invoke the remedy of injunction for the protection of the relator or the class he represents.

The cases which have sustained the right of individual members of the bar to the remedy of injunction to prevent the unlicensed practice of law accept defendant's major premise but reject his minor premise. They hold that the right of a licentiate to practice his profession is a property right. Dworken v. Apartment House Owners Association of Cleveland, 38 Ohio App. 265, 176 N. E. 577; Land Title Abstract & Trust Co. v. Dworken et al., 129 Ohio St. 23, 193 N. E. 650; Unger et al. v. Landlord's Management Corp., 114 N. J. Eq. 68, 168 A. 229; Sloan et al. v. Mitchell, 113 W. Va. 506, 168 S. E. 800; Paul et al. v. Stanley, 168 Wash. 371, 12 P. 2d 401; and Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356. See Annotation at 94 A. L. R. 359.

In the case of In re Hosford, 62 S. D. 374, 252 N. W. 843, 846, this court said, "First, the so-called 'right to practice law' is in fact not a vested or absolute 'right,' nor is it a property right, but rather it is a permit, license, franchise, or privilege granted upon demonstration of satisfactory moral fitness and satisfactory legal and general learning. To continue in the enjoyment of this privilege one must maintain his fitness and qualifications." This view finds support in the other holdings of the courts. Hulbert v. Mybeck, 220 Ind. 530, 44 N. E. 2d 830; Wollitzer v. National Title Guaranty Co., 148 Misc.

529, 266 N. Y. S. 184; In re Casebier, 129 Kan. 853, 284 P. 611; In re Edwards, 45 Idaho 676, 266 P. 665; Cohen v. Wright, 22 Cal. 293; and Petition for Integration of Bar of Minnesota, 216 Minn. 195, 12 N. W.2d 515.

That the right to practice a profession is highly prized by the members of the favored class requires no demonstration. Such a license opens doors of opportunity to acquire wealth and position, as well as to experience the deep satisfactions which flow from ministering unto the most delicate and pressing needs of humanity. Through the exercise of the granted privilege one may acquire that which all will readily classify as property, viz., a business and its good will. We do not think, however, that it follows necessarily from these considerations that the right or privilege to practice constitutes property. In our opinion, it is the public purpose which motivates the particular regulatory statutes that determines whether one who gains a privilege or franchise to enter a described regulated field of endeavor is thereby clothed with a right of property in that field which he may enforce against an intruder. When it is thought that monopoly or semi-monopoly will best serve the public interest, and provision is made for a franchise to accomplish that purpose, we think it logical to conclude that it was intended that the grant of franchise should give rise to a property interest in the described field of activity, and that equity, at the instance of the grantee, should prevent unlawful invasions of such a right. See 23 Am. Jur. 745 § 39. However, where the motivating purpose underlying the regulatory measures is but to protect the public from the unfit, and the profession or occupation is open to all who can qualify, we entertain the view that a license to enter grants no more than a person privilege, unaccompanied by a property right in the field of endeavor. It logically follows that in the one case the grant of the right gives rise to a correlative duty to the grantee on the part of those who do not hold a like franchise not to trespass; in the other case, the duty not to enter the field without a license runs solely to the public and is not correlative to the right or privilege of the licensees. Our rules, SDC 32.11 and the statutes they replace, were adopted to protect the public from the unfit, and do not seek to create a monoply.

Holding these views, we are not justified in receding from the quoted language of In re Hosford, supra, in order that we may acquire an added means of controlling the unauthorized practice of law. See Lewis & Spelling, The Law of Injunctions, § 7, p. 9. If the members of the bar have suffered some character of special injury, preventable by our courts under their common law or statutory powers other than the purported injury we have considered, such injury has been neither pointed out by appellants nor perceived by us.

In other jurisdictions the legislatures have seen fit to invest their courts with power to enjoin such unauthorized practice at the instance of members of the profession. See State v. Fray, 214 Iowa 53, 241 N. W. 663, 81 A. L. R. 286; Board of Medical Examiners v. Blair, 57 Utah 516, 196 P. 221; and Lamb et al. v. Whitaker, 171 Tenn. 485, 105 S. W. 2d 105.

■ Thus far we have ignored the title of this action and have considered it as a class action by relator on behalf of the members of the bar. Viewed in that aspect, because we are of the opinion that the complaint fails to exhibit special injury in the relator or in the class which he represents, it fails to invoke the remedy of injunction. Stated in another way, we hold that the complaint fails to show a breach of duty which defendant owes to the individual members of the bar.

We now turn to a consideration of the action as brought in the name of the state, on the relation of the relator, to prevent the breach of the duty defendant owes to the public to refrain from the practice of law. This involves defendant's second ground of challenge.

So viewed the complaint prays for an injunction on behalf of the state to protect its institutions, and to safeguard public or social interests from harm occasioned by alleged criminal conduct (see SDC 13.1255) which is not alleged to have invaded, or to threaten to invade, any property or pecuniary interest. As to the power of equity to enjoin such conduct at the instance of the state, the cases are in sharp conflict. They are collected in the annotations at 40 A. L. R. 1145 and 91 A. L. R. 315. On the one extreme, it has been said that even a public nuisance is beyond the reach of the

preventive powers of the courts of equity in the absence of a showing of interference with property rights. Attorney General v. Utica Insurance Co., 2 Johns. Ch., N. Y., 371. On the other extreme, it has been asserted that the power of equity is as broad as the duty of government to protect the public welfare. In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092. This area of conflict has been explored by Professor Harmon Caldwell in a thoughtful article appearing in 26 Ill. Law Rev. 259. It is his submission that a broad jurisdiction exists, and that the test to be applied in each case is whether the defendant's activities interfere or threaten to interfere with some interest of the state or of the public at large, and if so whether the preventive powers of equity will afford a more adequate protection than the remedies available at law. Elsewhere it has been stated that those courts which assert the more comprehensive jurisdiction limit its exercise to situations falling within the concept of nuisance. 45 Harvard Law Rev. 1096. And see SDC 37.4302-4308 and Art. V, § 14, Constitution of South Dakota.

This court has said, "Equity is a system of jurisprudence limited and bounded by well-defined rules. It is also well settled that equity will not protect political rights, but its jurisdiction is confined to the protection of property and civil rights." Putnam v. Pyle, 57 S. D. 250, 232 N. W. 20, 22. We have not had occasion to decide whether our equity courts are invested with this exceptional jurisdiction to prevent, at the instance of the state, conduct on the sole ground that it is injurious to public or social interests. We do not reach that question in the case at bar.

If it be conceded that our courts are invested with the broad jurisdiction described by Professor Caldwell, we are of the opinion that SDC 37.4707 states a rule applicable to its exercise. Under such an assumption, whether or not the particular wrong is embraced by the definition of nuisance contained in SDC 37.4701, it is a similar interference with the interests of the public. That first cited statute supra provides: "The remedy by civil action against public nuisance may be maintained by any public body or officer

authorized thereto by law or official duty, * * *. The quoted statute but states a settled rule of law. The writer in 39 Am. Jur. 863, § 11 asserts: "In cases of purely public concern and in action for wrongs against the public * * * the remedy, whether civil or criminal, is as a general rule by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf. * * * ."

We do not use the space required to set forth the several provisions of statute dealing with the State Bar. SDC 32.1113 to 32.1124. These sections have received our careful consideration with the result that we have found nothing therein which, in our opinion, will support a conclusion that the State Bar, a committee thereof, or any of its officers or members who do not hold public office, are authorized by law or by official duty to bring this action on behalf of the state or of the public.

The judgment of the learned trial court is affirmed.

POLLEY, RUDOLPH, and SICKEL, JJ., concur.
ROBERTS, J., not sitting.
SICKEL, J., (concurring specially).

One of the apparent objects of this action was the determination of the remedy, if any, aside from criminal prosecution, for the prevention of the unauthorized practice of law. The power of the court to punish the alleged offender for contempt was not decided in the foregoing opinion and, therefore, the following observations are submitted.

The appellants claim that the unauthorized practice of law "is contempt of all the courts of the state and certainly of the courts within whose territorial jurisdiction the unauthorized practice is committed." On this basis they asked for an adjudication of contempt in the trial court. Respondent claims that the circuit court had no jurisdiction to adjudge the respondent guilty of contempt.

Proceedings for contempt are of two classes: those instituted for the purpose of preserving the power and vindicating the dignity of the courts, which are punitive and criminal, and those instituted to enforce the rights of private par-

ties and to compel obedience to lawful orders and decrees made for that purpose, which are remedial and civil. State v. American-News Co., 62 S. D. 456, 253 N. W. 492.

It was said In re Nevill, 8 Cir., 117 F. 448, 459, as quoted in State v. American-News Co., supra [62 S. D. 456, 253 N. W. 493]: "A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment."

In this case the forbidden act was not specifically injurious to the complainants or any other person. This is a case in which "the state alone is interested in the enforcement of the penalty, it being a punishment which operates in terrorem, and by that means has a tendency to prevent a repetition of the offense in other similar cases." State v. Knight, 3 S. D. 509, 54 N. W. 412, 413, 44 Am. St. Rep. 809.

The contempt charged in this case is therefore punitive and criminal.

It is not claimed in this case that the acts complained of were committed in the presence of the circuit court. We have no statute which makes the unauthorized practice of law contempt of court and which prescribes the court in which such proceedings may be brought. It is the general rule in such circumstances, that the sole power to punish for contempt in case of a person engaging in the unauthorized practice of law, is in the court vested by law with authority to license persons to practice, and to suspend and disbar. State ex rel. Wright, Attorney General v. Barlow, 131 Neb. 294, 268 N. W. 95; State v. Goldman, 127 Neb. 340, 255 N. W. 32; In re Morse, 98 Vt. 85, 126 A. 550, 36 A. L. R. 527; People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; In re McCallum, 186 Wash. 312, 57 P. 2d 1259.

In People v. People's Stock Yards State Bank, supra [344 Ill. 462, 176 N. E. 906], the Supreme Court of Illinois said: "Having power to determine who shall and who shall not practice law in this state, and to license those who may act as attorneys and forbid others who do not measure up to the standards or come within the provisions of its rules, it necessarily follows that this court has the power to enforce

its rules and decisions against offenders, even though they have never been licensed by this court. Of what avail is the power to license in the absence of power to prevent one not licensed from practicing as an attorney? In the absence of power to control or punish unauthorized persons who presume to practice as attorneys and officers of this court the power to control admissions to the bar would be nugatory. And so it has been held that the court, which alone has authority to license attorneys, has as a necessary corollary ample implied power to protect this function by punishing unauthorized persons for usurping the privilege of acting as attorneys."

The foregoing statement was quoted with approval by the Supreme Court of Nebraska in State v. Barlow, supra [131 Neb. 294, 268 N. W. 98], and then the Nebraska court said: "Defendant further contends that, since the Legislature has, by statute  *  *  *  provided a penalty for the practice of law without a license and has not, by statute, made such practice a contempt, this court is powerless so to do. That an act denounced by statute as a crime may constitute a contempt of the court is beyond question, notwithstanding the offender may be prosecuted under a criminal statute. The question has been before other courts and a like holding has been made in People v. Association of Real Estate Taxpayers, supra [354 Ill. 102, 187 N. E. 823], and in Rhode Island Bar Ass'n v. Automobile Service Ass'n, supra [55 R. I. 122, 179, A. 139, 100 A. L. R. 226]. This court possesses inherent power to protect itself and its officers from any unlawful interference with its functions as a court. This it may do, not only for the purpose of protecting the court and its officers, but in the interest of the public at large to prevent it from being exploited and injured by one unlawfully assuming to act as an officer of the court. There are many instances where persons' rights have been jeopardized and sacrificed because of following the counsel and advice of unlicensed persons, giving or attempting to give legal advice."

By SDC 32.11 the Supreme Court of this state is given exclusive authority to license the practice of law. By SDC 32.12 the Supreme Court is also given the exclusive authority

to disbar and suspend attorneys. Therefore the authority to punish as contempt the unauthorized practice of law, when not committed in the presence of a court, is in this, and not the circuit court.