SCHULL CONSTRUCTION COMPANY, Appellant

v.

KOENIG et al., Respondents

(121 N.W.2d 559)

(File No. 10015. Opinion filed May 13, 1963)

**Austin, Hinderaker & Hackett,** Watertown, for Plaintiff and Appellant.

**Bicknell, Holland & Delaney,** Webster, for Defendants and Respondents.

HOMEYER, J. This is a suit for a declaratory judgment between a general contractor and his subcontractor for determination of rights and liabilities under a contract for the construction of certain waste treatment facilities for the city of Watertown. Plaintiff-appellant, the general contractor, will be referred to as the contractor, the defendants-respondents as the subcontractor, and the city of Watertown as the owner.

The contract for the construction was awarded to the contractor by the owner at a public letting on February 15, 1960. Prior to submitting his bid, the contractor obtained from the subcontractor an itemized proposal to do portions of the work for certain prices totaling $136,786.55. The contractor also received proposals for other portions of the work from other subcontractors. Certain of the material was furnished by the owner to be installed by the contractor. With the exception of one item, all prices contained in the proposal of the subcontractor to the contractor were raised in the accepted proposal which forms a part of the contract

between the contractor and the owner, the total increase being $13,561.45. Later, some adjustments on these figures resulted from change orders.

Following the acceptance of his bid, the contractor accepted the proposal of the subcontractor and a contract termed "Accepted Proposal" dated February 15, 1960, but which may have been signed after that date, was executed by the contractor and the subcontractor. This contract contains the same items and prices set forth in the preliminary offer or proposal and the subcontractor agreed to perform and complete such work and to furnish a performance bond acceptable to the contractor. The bond was furnished on March 15, 1960, with the contractor as obligee, and referred to the "attached contract" between the parties and the specifications and made the same a part of the bond by reference. The contractor and the owner on March 10, 1960, entered into a contract for the entire work which provided that the contractor shall carry builder's risk insurance in the amount of 100% of the insurable value of the project and file a certificate of such insurance with the owner. It is undisputed that this builder's risk insurance was supplied by the contractor at his expense. This contract also provides that until final acceptance the work was in charge of and under the care of the contractor and that it would rebuild and make good at its expense all injuries and damages to the work before final completion and acceptance; that the contractor would give its personal attention to the prosecution of the work and be present at the site continually during construction; that the contractor could not sublet any portion of the contract without the approval of the engineer and that no subcontract would relieve the contractor of his responsibility under the contract.

During the progress of the portion of the work being performed by the subcontractor at the main lift station, when neither workmen of the subcontractor nor of the contractor were present, a hose used by the subcontractor to provide water to lubricate pumps installed to assist him in by-passing sewerage around the construction work broke or became disconnected and flooded an excavation damaging electrical equipment provided by the owner and installed by another subcontractor. The damage was

repaired by the contractor at a cost of $4,784.86. A short time later on Halloween night, after the subcontractor had excavated for a lift station at a different site and was pumping water from the excavation to keep it dry, pranksters or persons unknown moved the discharge hose or pipe so that water ran back into the excavation and damaged electrical equipment of the owner installed by another subcontractor and the cost of rebuilding and reconditioning this damaged equipment in the amount of $3,847.-52 was paid by the contractor. The contract was completed and the work found satisfactory and accepted by the owner. The contractor has withheld from payments due the subcontractor an amount sufficient to cover the items of damage above.

The contractor has brought an action for a declaration of rights and liabilities under the contracts alleging that a question has arisen between it and the subcontractor as to liability for the repairs and states that the contractor has no plain, speedy or adequate remedy at law other than "to obtain a declaratory judgment construing said contracts." The prayer for relief asks for a declaratory judgment adjudicating the rights and liabilities of the parties under the contracts and settling responsibility for the damages incurred during construction. The complaint does not allege that the subcontractor was negligent. It does not allege a breach of contract. The subcontractor by his answer admitted the execution of a contract to construct a portion of the waste treatment facilities and that the contractor was withholding funds from him, but denied all other matters in the complaint. Judgment was entered directing the contractor to pay to the subcontractor the sum withheld. From this judgment the contractor appeals.

Plaintiff-appellant first contends that the subcontractor was guilty of negligence, either active or passive, and that the same was the proximate cause of the damage and the subcontractor should be charged with responsibility thereof. Liability for negligence was not pleaded and was not the theory on which the case was presented to the trial court, and upon the record before us we are satisfied that defendants-respondents did not consent to the determination of any issue of negligence by the trial court. The plaintiff at no time amended or attempted

to amend its pleadings alleging negligence. It was only after the trial court had issued its memoranda opinion and when proposed findings were submitted that plaintiff made any suggestion or intimation that it sought a determination of a fact issue on negligence. Nevertheless the trial court in its memoranda opinion volunteered to say that there was no evidence of negligence on the part of parties to the action. We agree. It found that the hose "broke for reasons and causes unknown" and that "persons unknown caused a water discharge hose to be moved" causing damage to property of the owner. Consequently, we refuse to consider the question of negligence in construing the contract. A reviewing court will not consider matters not properly before it or matters not determined by the trial court, Edgemont Imp. Co. v. N. S. Tubbs Sheep Co., 22 S.D. 142, 115 N.W. 1130; Tripp v. First National Bank of Yankton, 49 S.D. 9, 205 N.W. 666, and this rule is applicable to appellate review under the Uniform Declaratory Judgments Act, Chapter 37.01, SDC 1960 Supp. See Lickert v. City of Omaha, 144 Neb. 75, 12 N.W.2d 644; 26 C.J.S. Declaratory Judgments § 154, p. 362, § 164, p. 385; 16 Am.Jur., Declaratory Judgments, § 76, p. 341; Borchard, Declaratory Judgments, 2d Ed. 253; Anderson, Declaratory Judgments, 2d Ed., §§ 370, 487, 489.

We consider in review the only matter presented to the trial court by the pleadings and evidence, that is, which contract existed between the parties and the rights and obligations of such parties under the contract determined to exist. Was the contract between the contractor and owner dated March 10, 1960, a part of the contract dated February 15, 1960, between the contractor and subcontractor, to the extent of incorporating therein expressly or by implication the indemnity and hold-harmless provisions of the contract between the owner and the contractor?

The trial court found that there was no provision in the contract between the contractor and subcontractor, express or implied, making the subcontractor liable for the damage that occurred and that the subcontractor did not either expressly or impliedly assume the indemnifying and hold-harmless agreement of the contractor with the owner. We hold that the trial court was correct in making such determination.

Contracts of indemnity are strictly construed in favor of a subcontractor as against the contractor and unless the language employed clearly and definitely shows an intention to indemnify courts do not read into a written contract indemnity provisions not expressly set forth therein. Such contracts are subject to close scrutiny as to whether such intent was present when the contract was executed. Thompson-Starrett Co. v. Otis Elev. Co., 271 N.Y. 36, 2 N.E.2d 35; Walters v. Rao Electrical Equipment Co., 289 N.Y. 57, 43 N.E.2d 810, 143 A.L.R. 308; 42 C.J.S. Indemnity § 5, p. 569. Where the subcontractor expressly agrees to indemnify the contractor for all damages, he is bound by the terms of his contract. See annotation 143 A.L.R. 312.

The contractor contends that the reference to the plans and specifications in the preliminary proposal and to the specifications in the performance bond require a construction that the subcontractor, expressly or by implication, accepted the indemnity provision of the contract between the owner and the contractor. The preliminary offer and proposal was not the contract. It merely offered to do certain work and furnish certain material at certain prices if the contractor was the successful bidder on the entire contract to be performed for the owner. Other subcontractors undoubtedly submitted to the contractor preliminary proposals for other portions of the work to be performed on the project. Had the contractor not been the successful bidder, these preliminary proposals would have been a nullity and without binding effect on the parties. After the contractor was awarded the contract in accordance with his bid, which on the portion to be performed by respondent-subcontractor was about 10% above the total figure contained in the preliminary proposal, the contractor and subcontractor executed the contract dated February 15, 1960. This was the only contract between these parties and the president of the contractor corporation so testified. The performance bond required by this contract was only to assure performance of this contract and to furnish the labor and materials and to do the work therein specified. The contract dated February 15, 1960, contains no indemnity or hold-harmless provision and makes no reference to the March 10, 1960, contract. To read into this contract the indemnity and hold-harmless provision of the general contract would be making a new contract, or at least

materially supplementing the existing contract. This we cannot do. In an equity reformation action, Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250, it was said that the court "does not undertake to make a contract for the parties." This same rule applies to declaratory judgment actions for the construction of contracts. Anderson, Declaratory Judgments, 2d Ed., Vol. 2, § 585, p. 1313, § 590, p. 1324. As was said in Schoenwald v. Diamond K Packing Co., 192 Wash. 409, 73 P.2d 748, on the court making a new contract for the parties, "However broadly we may construe and apply the Declaratory Judgment Act  *  *  *  this the court is not permitted to do. In proper cases the court has always had the power to reform contracts, but never the power to make them. In this respect at least the Declaratory Judgment Act has not broadened the powers of the court. Under it the court may construe, but not supplement, contracts."

It would have been impossible for the subcontractor to furnish the materials and perform the work he was required to do without to some extent referring to the contract between the owner and the contractor, and even in the absence of express language, we agree that it was necessary by implication to consider the March 10, 1960, contract a part of the subcontract for this purpose. However, the provision to hold harmless or to indemnify was not a necessary and essential part of the subcontractor's agreement to furnish the material and do the work described in the contract of February 15, 1960. The increased prices which the contractor received for the portion of the work performed by the subcontractor is consistent with the interpretation that the parties never intended that the subcontractor assume the same obligation and responsibility to the owner as the contractor. In Arrow Sheet Metal Works v. Bryant & Detwiler Co., 338 Mich. 68, 61 N.W.2d 125, where there was an express reference in the subcontract to an extraneous writing (which is not true in the case at bar) the Michigan court said:

"All provisions of the agreement between the parties hereto must be construed together in such manner, if possible, as to avoid a conflict. If such avoidance is not possible, the express terms of the agreement must control as against implications based on the reference to the

plan and specifications contained in the general contract. However, we think such reference must be regarded as having been made for the purpose of identifying the work to be done and the extent, scope, and purpose thereof."

The Michigan court quotes at length from Guerini Stone Co. v. P. J. Carlin Construction Co., 240 U.S. 264, 36 S.Ct. 300, 306, 60 L.Ed. 636, and we repeat in part from that case:

"The reference in the subcontract to the drawings and specifications was evidently for the mere purpose of indicating what work was to be done, and in what manner done, by the subcontractor. Notwithstanding occasional expressions of a different view (citing cases), in our opinion the true rule, based upon sound reason and supported by the greater weight of authority, is that in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified." (cases cited)

We affirm the judgment.

All the Judges concur.