LONG PRAIRIE PACKING COMPANY, Plaintiff and Respondent,

v.

UNITED NATIONAL BANK, SIOUX FALLS, South Dakota, Defendant and Respondent, and concerning Marshall Chernin, Ida Raye Chernin, a/k/a Ida Raye Rabhan, Adam Chernin, Alex Chernin, and Lisa Chernin, Applicants.

No. 14164.

Supreme Court of South Dakota.

Original Proceeding.

Argued May 26, 1983.

Decided Oct. 5, 1983.

Richard L. Johnson, Sioux Falls, for plaintiff and respondent.

William Taylor of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for applicants.

WOLLMAN, Justice.

This is an original action pursuant to a writ of certiorari in which applicants are seeking to set aside a temporary restraining order entered by the circuit court on November 8, 1982, and continued by that court on November 16, 1982, January 21, 1983, and January 24, 1983. We grant the relief requested.

Marshall Chernin, one of the applicants in this action, was hired in 1978 by respondent, Long Prairie Packing Company (Long Prairie), to operate its plant in Long Prairie, Minnesota. Chernin was discharged in early November of 1982 for allegedly embezzling in excess of one million dollars from Long Prairie.

On November 8, 1982, the circuit court issued an ex parte temporary restraining order that prevented the United National Bank (United National) in Sioux Falls from

permitting any withdrawal of funds from any account on which Marshall Chernin, his wife, and their three children (applicants), had the right to withdraw funds and enjoined United National from permitting removal of any document in which any of the applicants had interest. The documents in support of the application for the temporary restraining order were an attorney's certificate from Long Prairie's South Dakota counsel and an affidavit of Long Prairie's Minnesota counsel, to which was attached a copy of an affidavit of a special agent of the Federal Bureau of Investigation. United National was the only defendant named on the caption of the temporary restraining order, which fixed November 16, 1982, as the hearing date for United National to show cause why the court should not enter a preliminary injunction. Both United National and Marshall Chernin were served with copies of the temporary restraining order and related documents on November 9, 1982.

On November 10, 1982, Long Prairie filed a complaint in an action in Minnesota against Marshall Chernin for the wrongful diversion of its funds. On November 15, 1982, Long Prairie filed a summons and complaint in an action in South Dakota against United National. The complaint in this action requested that United National be temporarily enjoined from permitting withdrawal of funds from applicants' accounts. This complaint was amended on December 8, 1982, to include applicants as defendants.

At the November 16, 1982, hearing, Marshall Chernin contested jurisdiction and moved to dissolve the temporary restraining order. The trial court apparently orally ordered that the temporary restraining order be continued until further order of the court.

On January 21, 1983, the trial court ordered that United National Bank as a mere stakeholder was entitled to be dismissed from the lawsuit. On January 24, 1983, the trial court modified the temporary restraining order to permit the release of $61,299 from applicants' account, this amount having been deposited before Marshall Chernin was employed by Long Prairie. The order also ordered that the remaining balance be held by United National until further order of the court.

SDCL ch. 21–8, part of Title 21, Judicial Remedies, provides for the remedy of injunctive relief, including temporary restraining orders. SDCL 15–6–65(b), part of the rules of civil procedure, governs the issuance of a temporary restraining order without notice.

Until July 1, 1978, SDCL 15–6–65 provided that "[t]he procedure for granting restraining orders and temporary and permanent injunctions shall be as provided by the rules of practice and procedure now existing or hereafter adopted." Through Chapter 155 of the 1978 Session Laws, the legislature amended SDCL 15–6–65 by providing detailed procedures by which preliminary injunctions and temporary restraining orders might be granted (why this was done by the legislature and not by this court is not clear).*

---

* SDCL 15–6–65(b) provides:

Where no provision is made by statute, a temporary restraining order may be granted without written or oral notice to the *adverse party* or his attorney only if

(1) it clearly appears from specific facts shown by affidavit or *by the verified complaint* that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice or the reasons supporting his claim that notice should not be required.

Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and, except in actions arising under chapters 25–3 and 25–4, shall expire by its terms within such time after entry, not to exceed ten days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of

Applicants maintain that the temporary restraining order was illegally issued because of the nonexistence of an underlying action. We agree, for we conclude that the language of SDCL 15–6–65(b), as well as the language of other statutes governing injunctive relief, presupposes the existence of an underlying action as a condition precedent to the application for injunctive relief.

SDCL 15–6–65(b) authorizes the issuance of a temporary restraining order without notice "to the *adverse party* or his attorney . . . if (1) it clearly appears from specific facts shown by affidavit *or by the verified complaint* that immediate and irreparable injury, loss, or damage will result to the applicant before the *adverse party* or his attorney can be heard in opposition." (emphasis added)

Turning to SDCL Title 21, Judicial Remedies, we find that injunctive relief is authorized by Chapter 21–8.

SDCL 21–8–6 provides:

When, *during the pendency of an action,* it appears by affidavit that a party to the action threatens, or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary restraining order or preliminary injunction may be granted to restrain such removal or disposition. (emphasis added)

SDCL 21–8–9 provides:

*If a complaint or other pleading is served,* it may, if sufficient, be used as part of or in lieu of the affidavit for a temporary restraining order or preliminary injunction, so far as applicable, but this shall not restrict such showing by affidavit as the applicant elects to make. *A copy of the complaint or other plead-*

*ing,* if intended as part of the showing, and a copy of any affidavit, so intended, must be served with the restraining order or injunction. (emphasis added)

SDCL 21–8–12 provides: "An order granting a temporary restraining order or preliminary injunction may be made by the court *in which the action is brought,* or by a judge thereof, and when made by a judge may be enforced as an order of the court." (emphasis added)

Putting aside any question of the constitutionality of the remedy of attachment provided by SDCL ch. 21–17, we note that SDCL 21–17–2 provides in part:

The plaintiff in a civil action, *at the time of issuing the summons or at any time thereafter,* may have the property of the defendant attached, in the manner hereinafter prescribed, as security for the satisfaction of such judgment as the plaintiff may recover, in any of the following cases:

. . . . .

(4) When the defendant, either person or corporation, has removed or is about to remove any of his or its property from this state, with intent to defraud or delay his or its creditors;

. . . . .

(emphasis added)

██ The message, both implicit and explicit, of the foregoing statutes is clear: Injunctive relief, whether by way of temporary restraining order or otherwise, posits the existence of an underlying action by the applicant for such relief against the party to be affected by the proposed restraint. That this should be so follows from the very

record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character. When the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On two days' notice to the

party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require. Temporary restraining orders by their very nature may not be appealed. (emphasis added)
SDCL 15–6–65(c) and 15–6–65(d) also address requirements of a temporary restraining order.

purpose of a temporary restraining order. As we pointed out in *Golden v. Oahe Enterprises, Inc.,* 90 S.D. 263, 279, 240 N.W.2d 102, 111 (1976), "The recognized purpose of a temporary restraining order is to suspend proceedings until the court can determine whether an injunction should issue." In the same vein, a temporary restraining order "is only an ancillary remedy for the purpose of preserving the status quo or restoring a status wrongfully disturbed pending the final determination of the action. . . . It is not a cause of action or a lawsuit in and of itself." *Hutchins v. Stanton,* 23 N.C.App. 467, 469, 209 S.E.2d 348, 349 (1974) (citation omitted).

■ We conclude, therefore, a temporary restraining order may not be issued pursuant to the provisions of SDCL 15–6–65(b) in the absence of a contemporaneous action against the party or parties whose actions are sought to be restrained.

■ Long Prairie argues that even if an underlying action against applicants was a condition precedent to the issuance of the temporary restraining order against United National, the failure to have commenced such an action was at most a technical lack of compliance with law that was cured by the subsequent commencing of the action against applicants. We are not disposed to so hold. Rather, we agree that

> [b]ecause a temporary restraining order may be issued ex parte, the device is vulnerable to abuse; indeed, the propriety of a court issuing any order that would subject a person to injunctive restraint without his knowledge has been questioned. To insure that the rights of all concerned are protected, Rule 65(b) prescribes certain safeguards for the issuance of temporary restraining orders that must be scrupulously honored. (footnotes omitted)

11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2952. *See also Leslie v. Penn Central R.R. Co.,* 410 F.2d 750 (1969); *Austin v. Altman,* 332 F.2d 273 (1964). Granted, the safeguards referred to include the requirements of a clear showing of irreparable injury, written, specific justi-

fication for the granting of the order without notice, and a brief life for the order and a prompt hearing thereon, nonetheless we think the same scrupulous adherence should be given to the requirement of the existence of a contemporaneous action.

We hold, therefore, that in the absence of such an underlying contemporaneous action against United National and applicants, the trial court was without jurisdiction to issue the temporary restraining order in question.

In view of our holding on the procedural issue, we need not rule on applicants' contention that the temporary restraining order violated their constitutional rights to due process of law. We note in passing, however, that temporary restraining orders issued without notice to the adverse party have survived constitutional attack. *See, e.g., United States v. Spilotro,* 680 F.2d 612 (9th Cir.1982); *State v. B Bar Enterprises, Inc.,* 649 P.2d 978 (Ariz.1982). *See also State v. Marsh,* 626 S.W.2d 223 (Mo.1982). As the United States Supreme Court has observed:

> *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. *Carroll v. President and Comm'rs of Princess Anne,* 393 U.S. 175, 180 [89 S.Ct. 347, 351, 21 L.Ed.2d 325] (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer. (footnote omitted)

*Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435, 450 (1974).

The writ of certiorari is made final, and an order will be entered dissolving the temporary restraining order of November 8, 1982, and all extensions thereof.

DUNN, MORGAN and HENDERSON, JJ., concur.

FOSHEIM, C.J., disqualified.