Stephen N. COURNOYER, Jr., Raymond Cournoyer, Louie Archambeau, Russell Redlightning, John Sully, Maxine L. Rouse, and Harlan Horned Eagle, Plaintiffs and Appellees,

v.

Gary MONTANA, Defendant and Appellant.

No. 18272.

Supreme Court of South Dakota.

Submitted on Briefs Nov. 29, 1993.

Decided Feb. 16, 1994.

Scott N. Heidepriem, Johnson, Heidepriem, Miner & Marlow, Sioux Falls, for plaintiffs and appellees.

Gary J. Montana, pro se.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUES*

Led by Stephen N. Cournoyer, Jr., chairman of the Yankton Sioux Tribe, several members of the Tribe's General Council (collectively designated as Cournoyer), sought a temporary restraining order (TRO) prohibiting Gary Montana (Montana), general legal counsel for the Tribe, from practicing law within the State of South Dakota until such time as he obtains a license to practice law from the State Bar of South Dakota. On February 18, 1993, the Honorable Paul J. Kern, Circuit Court Judge, First Judicial Circuit, granted the TRO restricting Montana's practice of law to the physical confines of the Yankton Sioux Tribe reservation or to the nonresident requirements of SDCL 16–18–2. Proceedings on the question of *permanent* relief were to be held at a date to be determined later.

■ "Temporary restraining orders by their very nature may not be appealed."

SDCL 15–6–65(b). Rather, a TRO "is only an ancillary remedy for the purpose of preserving the status quo or restoring a status wrongfully disturbed pending the final determination of the action ... It is not a cause of action or a lawsuit in and of itself." *Long Prairie Packing Co. v. United Nat'l Bank*, 338 N.W.2d 838 (S.D.1983). As five of the seven issues raised by Montana concern the merits of the underlying cause of action, they will not be considered on this intermediate appeal. However, the following issues may be addressed at this time. *Id.*

   I.  Did the trial court have subject matter jurisdiction over this matter? We hold that it did.

   II.  Did Cournoyer have standing to bring this action on behalf of the Tribe? We hold that he did.

We affirm the trial court.

### FACTS

Attorney Montana is licensed to practice law in the State of Idaho and is a member of the Federal Bar for the 9th and 10th Circuit Courts of Appeals. In 1991, the Yankton Sioux Tribe, a federally recognized tribe headquartered in Charles Mix County, South Dakota, selected Montana, fully aware that he was not licensed by the State of South Dakota, to serve as legal counsel for the Tribe. Montana's hiring was thereafter approved by the Bureau of Indian Affairs.

Montana, who does not reside on the reservation, associated himself with attorneys licensed in South Dakota for assistance, as required by SDCL 16–18–2, when representing the Tribe in legal matters off the reservation. Fearing that the legal affairs of the tribe could be jeopardized by Montana's practice of law off the reservation, Cournoyer sought to prohibit Montana from representing the Tribe. Montana asserts that Cournoyer has no standing and that this is an internal tribal matter of which South Dakota courts have no jurisdiction to decide.

### DECISION

I.  *The trial court had subject matter jurisdiction.*

   In questions of state jurisdiction over tribal lands, absent governing Acts of Congress, the question has always been whether the court's action infringed on the right of reservation Indians to make their own laws and be ruled by them. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987); *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). That is, did the trial court's prohibition of Montana's non-licensed practice of law within South Dakota, but *off* tribal lands, infringe on the Tribe's right to make and administer its own laws? The answer is "no."

For one to practice law in this state without a South Dakota license, SDCL 16–18–1 provides:

> Excepting as provided by § 16–18–2, no person shall engage in any manner in the practice of law in the state of South Dakota unless such person be duly licensed as an attorney at law, and be an active member of the state bar in good standing. Any person engaging in any manner in the practice of law in violation of this section may be restrained by permanent injunction in any court of competent jurisdiction, at the suit of the attorney general or any citizen of the state.

Montana, not a member of the South Dakota Bar but nevertheless practicing law within its realm, has subjected himself to South Dakota jurisdiction. Judge Kern restricted Montana to practicing law on the reservation, except when using local counsel per SDCL 16–18–2, which specifically allows nonresident attorneys to participate in legal matters in this state on a limited basis.

Cournoyer, concerned with the potential liability of the Tribe being represented in this state by an unlicensed attorney, sought to prohibit Montana from representing the Tribe off the reservation. Whereas the Yankton Sioux Tribe has the power to restrict the job parameters of its employees and officers, it lacks authority to determine who may practice law in South Dakota courts. On the contrary, South Dakota courts can address that issue. Accordingly, the resulting order in no way exercises jurisdiction over matters relating to internal trib-

al affairs and in no way impairs the authority of tribal courts. *Iowa Mut. Ins.*, 480 U.S. at 14, 107 S.Ct. at 975. Nor has the TRO imposed state law on reservations. *McClanahan v. State Tax Comm. of Arizona*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973).

Authorities cited by Montana concern the rights of tribes to enforce tribal laws on tribal lands. As the order in no way infringes upon Montana's right to practice law within the jurisdiction of any tribal land, his authorities are inapposite and his argument that South Dakota courts cannot regulate tribal attorneys practicing South Dakota law off the reservation is ludicrous. The trial court had jurisdiction.

## II. *Cournoyer had standing.*

■ With statutes cited in *State ex rel. Rice v. Cozad*, 70 S.D. 193, 16 N.W.2d 484 (1944) for support, Montana quickly maintains that Cournoyer cannot have standing. He fails to note, however, that during the legislative term following the release of *Cozad*, the pertinent statute was amended to permit *any citizen of the state* to bring an action to prevent the unlicensed practice of law. SDC 32.1121 (1945). The law remains the same today. SDCL 16–18–1, *supra.*

Under SDCL 15–6–17(a), "a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought ..." As Cournoyer, et al., have brought this action under their individual names and not in the capacity of their offices or under the auspices of the Yankton Sioux Tribe, SDCL 16–18–1 allows them, as citizens of the state, to bring this action to benefit the Yankton Sioux Tribe. Hence, no resolution or authorization by the General Council to bring the suit is necessary. We find that Cournoyer had standing.

Jurisdiction and standing are affirmed.

* SDCL 15–26A–3(6) provides:
　Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:
　....
　　　....
　(6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of

MILLER, C.J., and AMUNDSON, J., concur.

SABERS, J., concurs in result.

WUEST, J., dissents.

SABERS, Justice (concurring in result).

I write specially to point out that this court had the power to grant a discretionary or intermediate appeal despite the language of SDCL 15–6–65(b). SDCL 15–26A–13 provides in part:

An appeal from an intermediate order made before trial as prescribed by subdivision (6) of § 15–26A–3 may be sought by filing a petition for permission to appeal, together with proof of service thereof upon all other parties to the action in circuit court, with the clerk of the Supreme Court within ten days after notice of entry of such order.*

In my view, the language of the statute simply means that an appeal of right may not be taken from a temporary restraining order. I continue to believe the intermediate appeal was improvidently granted and, accordingly, I concur in result.

WUEST, Justice (dissenting).

Contrary to the provisions of SDCL 15–6–65(b), this court granted a discretionary appeal from a temporary restraining order entered by Judge Kern (Wuest and Sabers, JJ., dissenting). SDCL 15–6–65(b) (1984) (providing in pertinent part that, "Temporary restraining orders by their very nature may not be appealed."). Temporary restraining orders are for the purpose of maintaining the status quo until a hearing may be held. They become moot after the judge's decision is made. The court either grants a restraining order—which may be appealed—or denies it. The reason for the rule in SDCL 15–6–65(b) is self-evident.

sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding[.]

Rather than entering an order holding the discretionary appeal was improvidently granted, the court has now opted to write an opinion advertising the error.

Further, this court has taken another giant step toward opening the door to improvident appeals by deciding an issue—jurisdiction—which the trial court never ruled upon. We have repeatedly stated that we will not decide an issue in this court until the trial court has had an opportunity to pass upon it. *Hawkins v. Peterson,* 474 N.W.2d 90, 95 (S.D.1991) ("We will not consider issues raised for the first time on appeal.") (citing *Weaver v. Boortz,* 301 N.W.2d 673 (S.D. 1981)); *Bottum v. Herr,* 83 S.D. 542, 548, 162 N.W.2d 880, 883 (1968) (stating that a party "cannot now assert error on matters not considered by or ruled upon in the trial court"); *Schull Constr. Co. v. Koenig,* 80 S.D. 224, 229, 121 N.W.2d 559, 561 (1963) ("A reviewing court will not consider matters not properly before it or matters not determined by the trial court") (citations omitted).

In addition, "This court has consistently held that the right to appeal is statutory and no appeal may be taken unless a statute clearly authorizes one." *South Dakota Dep't of Transp. v. Freeman,* 378 N.W.2d 241, 241 (S.D.1985). This holding is supported by a long line of precedent from this court. *See Oahe Enter., Inc. v. Golden,* 88 S.D. 296, 299, 218 N.W.2d 485, 487 (1974) ("An attempted appeal from an order from which no appeal lies is a nullity [citation omitted] and confers no jurisdiction on this court, except to dismiss it."); *Builders Specialties Co. v. Swanson,* 82 S.D. 663, 665, 152 N.W.2d 550, 551 (1967) (stating that, "The right of appeal is statutory"); *County Sch. Bd. v. Cottonwood Sch. Dist. No. 41,* 81 S.D. 530, 531, 137 N.W.2d 882, 883 (1965) ("The right of appeal is purely statutory and unless that right exists, the court is without jurisdiction to determine the merits.") (citing *In re Swanson's Estate,* 71 S.D. 622, 623–24, 28 N.W.2d 663, 663 (1947)); *In re Johnson's Estate,* 66 S.D. 256, 258, 281 N.W. 113, 114 (1938) ("The right of appeal is statutory and can be exercised only when and as authorized by statute") (citations omitted).

In accordance with *Oahe Enter.,* 218 N.W.2d at 487, the only correct action for this court to take was dismissal of the appeal. I respectfully dissent from the actions of this court.