# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1598

_____

Vance Gillette,                                              *
                                                            *
    Plaintiff - Appellant,                                  *
                                                            *   Appeal from the United States
v.                                                          *   District Court for the
                                                            *   District of North Dakota.
North Dakota Disciplinary Board                             *
Counsel, Brent Edison,                                      *
                                                            *
    Defendant - Appellee.                                   *

_____

Submitted:  February 10, 2010
Filed:  July 9, 2010

_____

Before LOKEN, Chief Judge,* GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Vance Gillette, a member of the Three Affiliated Tribes and a licensed North Dakota and tribal attorney, commenced this official capacity action against Brent Edison, Assistant Disciplinary Counsel of the Disciplinary Board of the Supreme Court of North Dakota (the Board). Gillette seeks declaratory and injunctive relief preventing the Board from prosecuting a disciplinary action for alleged misconduct

_____

*The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

arising out of his representation of Native American clients in tribal court litigation. The district court[1] dismissed the suit, concluding that the federal court should abstain from interfering in this ongoing state judicial proceeding under abstention principles first announced in Younger v. Harris, 401 U.S. 37 (1971), and applied to state bar disciplinary hearings in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Gillette appeals. Reviewing the district court's application of the Younger abstention doctrine for abuse of discretion, we affirm. See Norwood v. Dickey, 409 F.3d 901, 903 (8th Cir. 2005) (standard of review).

Gillette represented five members of the Tribe in wrongful discharge actions against the Tribe in the Fort Berthold reservation's tribal court. The cases settled when the Tribe agreed to pay each plaintiff $35,000. Gillette then sued his clients in tribal court, seeking a 30% contingent fee. One client filed a written complaint with the Board, alleging that Gillette had committed ethical violations by unilaterally altering initial written agreements establishing a 10% contingent fee arrangement. The complaint concluded: "This man does not deserve a lawyer license, and does not deserve to represent anyone in court because of his tactics."

Some months later, the tribal court entered judgment awarding Gillette a 10% contingent fee on the total settlement amounts paid. Three months after that, Edison filed a Petition for Discipline with the Board alleging that Gillette violated multiple provisions of the North Dakota Rules of Professional Conduct by unilaterally amending contingent fee agreements and attempting to collect never-agreed-upon fees. Gillette refused to accept service of the Petition. Instead, he commenced this action in federal court, seeking to enjoin the disciplinary proceedings on the ground that the Three Affiliated Tribes Bar Board has exclusive authority to regulate attorney conduct on the Tribe's reservation.

---

[1]The HONORABLE DANIEL L. HOVLAND, Chief Judge of the United States District Court for the District of North Dakota.

In Younger, noting its historic reluctance to enjoin pending proceedings in state court, the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings absent a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54. The Court extended this principle to state court "civil proceedings in which important state interests are involved," such as protecting children from child abuse, public nuisance, enforcement of contempt, and safeguarding public assistance programs. Moore v. Sims, 442 U.S. 415, 423 (1979), and cases cited. Then, in Middlesex, the Court held that a State's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses" is an interest that "calls Younger abstention into play." 457 U.S. at 434-35.

Gillette argues that North Dakota "lacks valid interests to regulate conduct in tribal court." But the Supreme Court of North Dakota is not purporting to regulate Gillette's conduct before the tribal court or on the reservation. Rather, the Board concedes that any disciplinary action taken by the Supreme Court will not affect Gillette's right to practice in tribal court, which is regulated exclusively by the Tribe. Cf. In re Hoare, 155 F.3d 937, 940 (8th Cir. 1998) (state court discipline not binding on federal court). Thus, this regulation of Gillette's right to practice in North Dakota will not "infringe on the Tribe's right to make and administer its own laws." Cournoyer v. Montana, 512 N.W.2d 479, 480 (S.D. 1994).

The Supreme Court of North Dakota has expressly declared that its interest in assuring the professional conduct of the attorneys it licenses includes subjecting a lawyer admitted to practice in North Dakota to disciplinary action "even though the conduct of the lawyer giving rise to the discipline may have occurred outside of this jurisdiction." Rule 8.5(a) of the N.D. Rules of Prof. Conduct . The Court applied that principle in disciplining a North Dakota lawyer not presently licensed who was disciplined by the Texas Commission for Lawyer Discipline. In re Discip. Action Against Hawkins, 623 N.W.2d 431, 435 (N.D. 2001). It again applied the principle

in unilaterally disciplining a lawyer for misconduct in a federal immigration proceeding, In re Discip. Action Against Vela, 699 N.W.2d 839, 840 (N.D. 2005), and another lawyer for misconduct in litigation before a federal court in North Carolina, In re Discip. Action Against Landon, 600 N.W.2d 856, 857 (N.D. 1999). These authorities make clear that the "extremely important" state interest recognized in Middlesex applies in this case as well. When an attorney's fitness -- and thus the public interest -- are at stake, the location of the misconduct may be irrelevant.

However, the Supreme Court in Middlesex also held that Younger abstention is only proper if state disciplinary hearings "constitute an ongoing state judicial proceeding," and if there is "adequate opportunity in the state proceedings to raise constitutional challenges." Id. at 432. And the Court again noted that "bad faith, harassment, or other extraordinary circumstance . . . constitute an exception to Younger abstention." Id. at 429.

Here, as in Middlesex, 457 U.S. at 433-434 & nn. 12 & 13, it is clear that Gillette is seeking to enjoin an ongoing state judicial proceeding. The North Dakota Constitution vests in the Supreme Court of North Dakota authority to "promulgate rules and regulations for the admission to practice, conduct, disciplining and disbarment of attorneys at law." Art. VI § 3. Exercising this authority, the Court has promulgated the North Dakota Rules for Lawyer Discipline. Rule 3.5 declares that "disciplinary proceedings are neither civil nor criminal but are quasi-judicial proceedings." Rule 3.1(E) provides that the Petition filed and served by Disciplinary Counsel Edison in this case initiated "a formal disciplinary proceeding" which is then assigned to a hearing panel of the Board. Rule 3.3 provides for reciprocal discovery and the subpoenaing of witnesses. Rule 3.5(B) provides that the North Dakota Rules of Civil Procedure and North Dakota Rules of Evidence generally apply in disciplinary proceedings. Finally, Rule 3.1(F) provides that counsel for the Board, the complainant, or the attorney sought to be disciplined may petition the Supreme Court

-4-

for review of the hearing panel's decision, where briefing and oral argument "will be as provided in the North Dakota Rules of Appellate Procedure."

The Supreme Court of North Dakota has declared that the Board is "an arm of this court" and that the Court has an obligation to ensure that disciplinary proceedings "are conducted fairly and consistently with their purpose." Lashkowitz v. Disciplinary Bd., 410 N.W.2d 502, 504 (N.D. 1987). Given this decision and the governing Rules, we have no doubt that this case involves an ongoing state judicial proceeding for purposes of Younger abstention.[2] This is consistent with Supreme Court decisions recognizing that state disbarment proceedings are "adversary proceedings of a quasi-criminal nature" and are therefore subject to constitutional procedural due process protections. In re Ruffalo, 390 U.S. 544, 551 (1968).

Gillette concedes that the Supreme Court of North Dakota's disciplinary proceeding "affords an adequate opportunity to raise the federal questions presented." Norwood, 409 F.3d at 903. Accordingly, the three prerequisites to Younger abstention are present in this case -- (1) an ongoing state judicial proceeding that (2) implicates an important state interest and (3) affords an adequate opportunity to raise federal statutory and constitutional challenges.

Gillette nonetheless argues that Younger abstention does not apply because, absent an authorizing federal statute, North Dakota's assertion of disciplinary jurisdiction is regulation of conduct in Indian country that infringes "on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220 (1959), followed in Fisher v. District Court, 424 U.S. 382, 386 (1976). But in these cases, the Supreme Court directly reviewed by writ of certiorari exercises of jurisdiction by state supreme courts, not abstention decisions by lower

---

[2]Gillette's assertion that the disciplinary proceedings were not ongoing when he commenced this action because he refused service of the Petition borders on the frivolous. Compare Middlesex, 457 U.S. at 428-29.

federal courts. If the three prerequisites to <u>Younger</u> abstention are present, a lower federal court may not consider the state court's jurisdiction in the ongoing judicial proceeding, absent extraordinary circumstance. Having decided that the three prerequisites to <u>Younger</u> abstention are present, the only pertinent question raised by this argument is whether the issue of competing tribal sovereignty constitutes an "exceptional circumstance" warranting an equitable exception to <u>Younger</u> abstention. See <u>Middlesex</u>, 457 U.S. at 429, 437. Gillette does not raise this issue on appeal. He argues only that the Supreme Court of North Dakota has no jurisdiction and may not infringe on the Tribe's authority. But he concedes that these questions may be raised in the Supreme Court of North Dakota proceeding, and cases such as <u>Williams</u> and <u>Fisher</u> demonstrate that the Supreme Court of the United States will exercise its certiorari jurisdiction to protect tribal court authority from improper state court encroachment. In these circumstances, the district court properly abstained.

Finally, Gillette argues that Edison and the Board acted in bad faith and violated his right to equal protection of the laws by commencing this disciplinary proceeding without consulting the Tribe, whereas the Board's normal practice is to wait until reciprocal discipline has been imposed by the jurisdiction in which the alleged misconduct occurred, as in <u>Hawkins</u>. The short answer to the equal protection claim is that it can be raised in the ongoing state court proceeding. The short answer to the suggestion of bad faith is that none has been shown and, in applying <u>Younger</u> abstention, we will not presume bad faith or harassment by the Supreme Court of North Dakota adjudicators. See <u>Neal v. Wilson</u>, 112 F.3d 351, 357 (8th Cir. 1997).

The judgment of the district court is affirmed.

_____